UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| PATRICK BAKER, | ) | **FIRST AMENDED** |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | **WITH** |
| | ) | **JURY TRIAL** |
| -against- | ) | **DEMANDED** |
| | ) | |
| | ) | |
| THE VILLAGE OF PIERMONT, POLICE OFFICER | ) | 7:20-CV-1690 |
| PETER BOUTROS, individually and as an employee of | ) | |
| the Village of Piermont, CHIEF MICHAEL O'SHEA, | ) | |
| individually and as an Employee of the Village of | ) | |
| Piermont, and JOHN DOES NO.s 1-10 (said names being | ) | |
| unknown and fictitious) | ) | |
| Defendants. | ) | |

_____

Plaintiff, PATRICK BAKER, by and through his attorneys, THE LAW OFFICES OF DAVID FRIED, P.C., hereby affirms to the best of his knowledge, under the pains and penalties of perjury, as and for his First Amended Complaint in this action against Defendants, THE VILLAGE OF PIERMONT, POLICE OFFICER PETER BOUTROS, individually and as an employee of Village of Piermont, CHIEF MICHAEL O'SHEA, individually and as an Employee of the Village of Piermont, and JOHN DOES NO.s 1-10, as follows:

## **NATURE OF ACTION**

1.      This is an action to recover money damages based upon an illegal strip search of Plaintiff and other egregious violations of his rights under the Constitutions and laws of the United States of America and of the State of New York.

## **JURISDICTION AND VENUE**

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and various Amendments to the United States Constitution as enumerated below.

3.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 since all of the events and omissions giving rise to the Plaintiff's claims occurred within Rockland County, New York; the actual place of employment of all of the Defendants is Rockland County, New York; the municipal Defendants are geographically situated within Rockland County, New York; and Plaintiff resides within Westchester County, New York. Rockland and Westchester Counties are geographically situated within the Southern District of New York.

## JURY DEMAND

5.      Plaintiff demands a trial by jury in this action.

## NOTICE OF CLAIM

6.      Pursuant to New York State General Municipal Law, Plaintiff served a Notice of Claim within the ninety (90) day statutory period, giving appropriate notice of these claims to the extent required by law.

7.      Over thirty (30) days has since expired without Defendants remedying, paying, settling or adjusting this claim.

8.      On September 25, 2019, a 50-h Hearing /Deposition was conducted.

## PARTIES

9.      Plaintiff, PATRICK BAKER (hereinafter "Patrick" or "Plaintiff"), is an individual who resides in the County of Westchester, State of New York.

10.     Defendant VILLAGE OF PIERMONT (hereinafter referred to as "PIERMONT") was and continues to be a duly constituted municipal corporation located in the County of Rockland, State of New York.

11.     Defendant POLICE OFFICER PETER BOUTROS (hereinafter referred individually, in his official capacity, and or collectively, as "BOUTROS") is both an individual and an employee of Piermont, and upon information and belief, was acting within the scope of his employment during the incidents complained of herein that commenced on or about  March 14, 2019.

12.     Defendant CHIEF MICHAEL O'SHEA (hereinafter referred  individually, in his official capacity, and or collectively, as "O'SHEA") is both an individual and an employee/former employee of Piermont, and upon information and belief, was acting within the scope of his employment during the incidents complained of herein that commenced on or about  March 14, 2019.

13.    Defendant JOHN DOES NO.s 1-10 (hereinafter referred both individually and collectively as "JOHN DOE") is/are both an individual(s) and an employee(s)/agent(s) of Piermont,  and upon information and belief, was acting within the scope of his or her employment and or agency during the incident(s) complained of herein that commenced on or about  March 14, 2019 and continuing.  JOHN DOE is believed to reside within the jurisdictional territory of the Southern District of New York.  The specific identity of JOHN DOE is unknown to Plaintiff as JOHN DOE has participated in the actions complained of herein anonymously or under the guise of PIERMONT.

## STATEMENT OF FACTS

14.     Patrick is a 24 year old male with no criminal record who resides with his parents in Westchester County. Patrick works as a licensed home improvement contractor. He earned his bachelor's degree in Business Administration from Pace University in Pleasantville, New York having successfully completed a rigorous double major in both Finance and Human Resource Management. He graduated Pace University with Magna Cum Laude honors.

15.     In the evening hours, on or about March 14, 2019, Patrick was traveling home via Route 9W in the Village of Piermont, New York in his vehicle. What follows is simply inconsistent with American values.

16.     BOUTROS initiated the lights and siren of his police vehicle and stopped Patrick's vehicle.

17.     Upon being pulled over, Patrick responsibly turned off his vehicle's engine, rolled down all of his windows, illuminated the interior lights, and placed both hands on the steering wheel.  Patrick believed such actions would increase visibility and, accordingly, reduce officer safety concerns.

18.     BOUTROS approached Patrick's vehicle and demanded Patrick's license, registration, and insurance.

19.     Patrick asked BOUTROS why he was pulled over, and BOUTROS alleged that Patrick was travelling 55 MPH in a 40 MPH zone.

20.     Simultaneously, he handed to BOUTROS his driver license, vehicle insurance card and a PBA card he had previously received from a friend who is a police officer, and advised BOUTROS that a temporary registration was affixed to his vehicle's windshield as he had recently purchased the vehicle he was operating.

21.     Thus, Patrick provided to BOUTROS all of the documentation that was demanded. At this point, a speeding ticket should have been issued if in fact BOUTROS had requisite justification to issue such a citation, and sent Patrick on his way as there was no other indication of suspicion as to any other remotely possible criminal activity afoot in any manner or to any degree, whatsoever.  The corresponding incident reports do not allege that BOUTROS saw something, smelled something, heard something, or in any other manner observed anything that would have justified further investigation by BOUTROS of Patrick.  Simply, the traffic stop should

have concluded.  BOUTROS' actions that followed this moment, lack probable cause and as such, are illegal.

22.     Nonetheless and without legal authority, but under the guise of official law enforcement authority and color of law, BOUTROS directed Patrick to open his glove compartment.

23.     Patrick obeyed the aforesaid order of BOUTROS and opened the glove compartment. Nothing illegal nor suspicious appeared in the glove compartment whatsoever.

24.     BOUTROS then asked Patrick why he appeared nervous.  Patrick responded he was not.  Even if Patrick had been nervous, like many people are when stopped by the police even for simple traffic infractions, nervousness is not appropriate legal justification for BOUTROS' continued, unwarranted, and illegal actions, inquiry, and fishing expedition-like investigation.

25.     Without any legal justification or authority, BOUTROS then inquired if Patrick had taken any drugs or alcohol. Patrick denied having ingested either substance.  Police reports state that there were no indicia of intoxication.

26.     BOUTROS continued his illegal "investigation" of this speeding stop by interrogating Patrick as to whether or not he took any prescription medication. Thus, at this point, the illegal and unjustified line of questioning went so far as to even include questions about legally prescribed medications. Patrick stated that he took his daily prescription medication earlier in the morning for ADHD as that is his ordinary routine. Said prescription has zero impairing effects and was taken as directed by his medical doctor. Again, no indicia of intoxication or impairment appear in any police reports of this incident.

27.     BOUTROS,  without any legal justification or authority, then asked Patrick if he had this medication in the vehicle, and Patrick responded that he always keeps it at home where he takes it with his breakfast each morning.

28.     The questioning continued. BOUTROS further inquired of Patrick, without any legal justification or authority, as to whether he possessed anything illegal in his vehicle. Patrick responded that he did not.  BOUTROS responded by asking that if he searched the vehicle, would he find anything illegal? Patrick answered that BOUTROS would not.

29.     Consent was neither sought nor granted. Instead, and without any legal justification or authority, BOUTROS ordered Patrick to step out of his vehicle merely because BOUTROS unilaterally perceived nervousness.  Patrick exited the vehicle as directed.  Then, BOUTROS directed Patrick to empty his pockets.

30.     Notwithstanding that Patrick should never have been ordered out of the car merely on perceived nervousness, at this time, quite responsibly, Patrick advised BOUTROS that he was carrying a legally registered and licensed firearm which was secured on his waistband in a holster. This disclosure occurred after Patrick exited the vehicle as directed. Patrick had a license for his firearm. He had his gun with him because he was fishing with a friend earlier that same day.

31.     Although Patrick's removal from the vehicle was without any legal justification or authority based upon the facts alleged thus far, and Patrick should never have been exposed to any further police action after he produced his driver license, registration, and proof of insurance, Patrick was nonetheless in the position to have to advise BOUTROS that he possessed a firearm to mitigate prospective officer safety concerns.

32.     BOUTROS ordered Patrick to turn around and put his hands on his vehicle while BOUTROS forcefully removed Patrick's licensed and registered firearm.  While Patrick told BOUTROS he had his firearm license card on his person, BOUTROS did not allow Patrick to present same.  Patrick should never have been in this position as police action should have concluded once Patrick produced his license, registration, and proof of insurance.  Everything after that moment was tainted, without probable cause, and lacking of any legal justification or authority.

33.    BOUTROS then brought Patrick to the back of his vehicle, patted him down, removed all of his belongings from inside his pockets, and again asked if he had anything illegal on him to which Patrick again responded that he did not.

34.    BOUTROS placed all of Patrick's belongings on the trunk of his vehicle, directed him to stand four (4) feet behind the vehicle and to wait while he searched his vehicle.

35.    Consent was neither sought nor granted.  A search warrant was neither sought nor issued.  Patrick should never have been in this position as police action should have concluded once Patrick produced his license, registration, and proof of insurance.  Everything after that moment was tainted, without probable cause, and lacking of any legal justification or authority

36.    While Patrick was not handcuffed nor advised that he was under arrest when the vehicle search took place, he was also not free to leave or otherwise terminate the encounter with BOUTROS.

37.    After the vehicle search, BOUTROS directed Patrick to stand in the same place outside his vehicle for an extended period as BOUTROS was sitting in his patrol vehicle.

38.    After quite some time, BOUTROS opened his vehicle's passenger side window and asked Patrick why he had the firearm on his person.  Despite custodial interrogation, Patrick was not Mirandized.

39.    Patrick explained that he obtained a permit from the County of Westchester, and that he had been fishing that day.

40.    Nervously experiencing his first investigation by law enforcement, Patrick asked if he could call one of his police officer acquaintances to explain the situation but BOUTROS declined to fulfill his request.  Patrick believed that a police officer character reference could alleviate prospective officer safety concerns.

41.    Patrick remained standing outside for another several minutes in frigid temperatures.  BOUTROS then exited his patrol vehicle and told Patrick that he (Boutros) is "not an asshole" and that Patrick could go sit in his own vehicle due to the cold temperatures outside.

42.    Before Patrick entered his own vehicle, BOUTROS demanded to know the location of Patrick's cellphone and ordered him to take off his watch if he was wearing one. Patrick wasn't wearing a watch and told BOUTROS that his cell phone was on the front passenger seat of his vehicle.

43.    After BOUTROS seized Patrick's cellphone, he allowed Patrick to sit in his vehicle but without any heat (because BOUTROS took the ignition keys as well). Patrick was clearly detained.

44.    After several minutes of freezing in his vehicle, Patrick was ordered to step out of his vehicle, place his hands on his back for handcuffing and enter BOUTROS' patrol vehicle where he was confined and eventually transported to PIERMONT's police station.

45.    When Patrick asked why he was being arrested, BOUTROS told him it was because he had a loaded weapon but Patrick reminded BOUTROS that he had his pistol permit with him, which BOUTROS disregarded.

46.     Patrick should never have been in this position as police action should have concluded once Patrick produced his license, registration, and proof of insurance.  Everything after that moment was tainted, without probable cause, and lacking of any legal justification or authority.

47.    BOUTROS again asked Patrick if he had anything illegal in his vehicle to which Patrick again responded that he did not.

48.    Patrick's vehicle was searched again while he sat confined and handcuffed in the back of the patrol vehicle.

49.     After the vehicle search, which yielded no contraband of any nature or kind whatsoever, BOUTROS then Mirandized Patrick despite the earlier custodial interrogation.

50.     Despite Patrick's request to know what he was charged with, BOUTROS provided no answer or explanation.

51.     Patrick remained handcuffed and confined in BOUTROS' patrol vehicle until a tow truck arrived to retrieve Patrick's vehicle despite there being no contraband found in his vehicle.

52.      BOUTROS then transported Patrick to his employer's police headquarters.

53.     At the police headquarters, a truly horrifying plot unfolded. Patrick and BOUTROS were the only two people present, upon information and belief, in the entire building which was dark and had to be unlocked. As PIERMONT's police department is a very small law enforcement agency, its headquarters is staffed in a limited manner, sometimes with no one at headquarters. On the night in question when the two arrived at this location, there were, upon and information and belief, no other people present other than BOUTROS and Patrick.  PIERMONT's police station is a small suburban facility in a row of retail storefronts.  At the late hour relevant herein, surrounding businesses were overwhelmingly closed making the area quite desolate which exacerbated Patrick's fear in large part because BOUTROS was unsupervised and unmonitored.

54.     Patrick was brought into a room where BOUTROS used a short handcuff chain taken from his duty belt (rather than a longer one, which was also readily available and within feet of the short one) to handcuff Patrick to the wall with Patrick's arm elevated over his head for an extended period of time. This caused Patrick significant and long-lasting pain and discomfort. The longer chain would have provided much greater physical comfort and reduce the chance of injury to Patrick.

55.     At no time did Patrick demonstrate any behavior, resistance, obstruction, protest, or defiance that would have required him to be physically secured in the manner described herein whether for officer safety or any other reason.

56.     Then, BOUTROS ordered Patrick to sit down at a computer, and asked him a variety of questions to which Patrick was encouraged to provide answers in a specific way as doing so would, in sum and substance according to BOUTROS, "help" Patrick.

57.     BOUTROS began completing a "Voluntary Statement" form and stated that Patrick's cooperation would be "helpful".

58.     Patrick again asked BOUTROS what he was being charged with. Again, no answer was provided.

59.     BOUTROS then instructed Patrick to answer his questions in a specific manner, in an apparent attempt to build a criminal case against himself.

60.     BOUTROS then instructed Patrick to sign the "Voluntary Statement" and *Miranda* Warning Sheet. At no time did Patrick intend a knowing, intelligent or voluntary statement or waiver of any legal or constitutional right or protection.

61.     BOUTROS hovered over Patrick in an intimidating manner while Patrick followed instructions, placing his initials where ordered on the form while under duress.

62.     Patrick was then handcuffed again to the wall with the shorter handcuffs that elevated Patrick's arm in a painful and cruel position.

63.     Several hours of detention having been endured, Patrick asked to use the bathroom, and BOUTROS pointed to a toilet that was open for viewing. There were no privacy barriers of any kind.

64.     BOUTROS took the handcuffs off Patrick while he was attempting to urinate. He had trouble urinating as BOUTROS stood behind Patrick within inches and stated in an intimidating tone "what's wrong, you got cold feet?".

65.     Finally urinating due to physical necessity, BOUTROS stated "there we go" in a humiliating and demeaning tone.

66.     Patrick was then returned to the small chain, his arm elevated painfully again over his head.  Patrick experienced and complained of significant pain to his wrist, arm, and shoulder. No accommodation was provided despite the readily accessible longer, more comfortable chain.

67.     The abuse Patrick experienced by BOUTROS thus far could never have prepared him for what was to happen next.

68.     Patrick asked BOUTROS if he could lay down. He had been detained at this point for several hours and his wrist, arm, and shoulder were in continuously severe pain from the short chain. BOUTROS responded that he could lay down but a strip search was required first.

69.     Patrick responded that he would rather sit on the bench than lay down so he could avoid the threat of being stripped naked and physically handled. However, BOUTROS responded, in sum and substance, "that's your choice, but I'm strip searching you regardless."

70.     Upon being threatened with the strip search, Patrick inquired whether that was really necessary, and BOUTROS said it was required and asked if Patrick had anything to hide.

71.     Patrick said he did not have anything to hide but that he was afraid because they were the only two people in the building and he found this degrading, humiliating, and completely unwarranted.

72.     BOUTROS simply responded, "it's not like I'm going to make you whip your dick out for me."  In fact, Patrick's genitals and rectum were exposed despite BOUTROS' crude statement.

73.     Patrick begged BOUTROS not to proceed with the strip search of his soon-to-be naked body. BOUTROS ordered Patrick to go to the back right corner of the cell and "drop [his] pants and underwear."

74.     Succumbing to the officer's self-anointed power, Patrick did as he was told. He cried from humiliation.

75.     This incident originated as a routine traffic stop for speeding. There were no indicia of any criminal activity, intoxication, nor the like prior to, during, or upon presentation by Patrick to BOUTROS of his license, registration, and proof of insurance.  Patrick should never have been in this position as police action should have concluded once Patrick produced his license, registration, and proof of insurance.  Everything after that moment was tainted, without probable cause, and lacking of any legal justification or authority. Accordingly, the only allegedly legitimate authority BOUTROS had over Patrick stemmed from the observation of alleged speeding. Nonetheless, a strip search of his naked body was threatened and actually performed which revealed Patrick's genitals and rectum.

76.     BOUTROS instructed Patrick to bend over and squat, while Patrick was naked and both his genitals and rectum were exposed.  BOUTROS visually inspected both private portions/areas of Patrick's body.  BOUTROS and Patrick were the only people in the building. Patrick was horrified.  This illegal strip search and visual cavity search were performed upon Patrick despite, among other things:

(a) There was no probable cause to arrest Patrick on any felony, especially since police action should have concluded once Patrick produced his license, registration, and proof of insurance.  Everything after that moment was tainted, without probable cause, and lacking of any legal justification or authority.

(b) There was no probable cause to arrest Patrick for the charged misdemeanors, especially since police action should have concluded once Patrick produced his license, registration, and proof of insurance.  Everything after that moment was tainted, without probable cause, and lacking of any legal justification or authority.

(c) Notwithstanding the lack of probable cause, the charged misdemeanor was a section of the New York State Penal Law which was previously deemed unconstitutional but was nonetheless filed by BOUTROS as a criminal charge against Patrick.

(d) A strip search is unconstitutional when probable cause exclusively exists as to a non-criminal speeding infraction as is the case here.

(e) Patrick was not in a general prison population setting, was never expected to be admitted to a general prison population setting at any time during the interaction with BOUTROS, nor was he ever actually admitted to a general prison population. In fact, Patrick was in a vacant cell and there were no other people or prisoners present anywhere.

(f) In the underlying "criminal" action and the precedent "investigation" by BOUTROS, there were no allegation that Patrick was concealing contraband at any time nor were there any indicia or suspicions of concealed contraband, weapons, or drugs.

(g) Patrick did not demonstrate any particular characteristics that would warrant a strip search and or visual cavity search.

(h) There were no other circumstances of the arrest that gave rise to the need for a strip search or visual cavity search, and

(i) BOUTROS' strip search and visual cavity search of Patrick was suspicionless.

77.    After searching his naked body, BOUTROS stated to Patrick "see that wasn't so bad" and threw a blanket at him and shut the cell door where Patrick cried in shame for the next hour.

78.    Patrick had never felt so degraded or powerless in his whole life.

79.    Later, Patrick overheard BOUTROS speaking with someone on the telephone about his forthcoming bail: "this kid's from Scarsdale, that's a rich area, they got money there, what do you think? Fifteen?"

80.    At that point, BOUTROS entered the cell and told Patrick his bail is going to be $15,000. It appeared to Patrick that bail was determined even before a Judge arrived.

81.     Patrick started crying, stating he did not have that kind of money. BOUTROS  then asked if Patrick had $5,000.

82.     BOUTROS stated that a cash payment of bail was required and asked Patrick who he wanted to telephone for money;  This, despite a requirement in New York that bail be set in more than one form (not just cash).

83.     Patrick said he wanted to call his father and BOUTROS said he cannot call him but that he would telephone his father for him instead.

84.     BOUTROS dialed Patrick's father's telephone number, shut the door, and left. Patrick did not hear the conversation that took place with his father.

85.     Several hours later, Patrick was escorted to arraignment on a felony, misdemeanor and traffic violation.  Said charges were all authored, attested to, and filed with the municipal court by BOUTROS. Accordingly, BOUTROS directly initiated the criminal prosecution against Patrick.

86.     No attorney was present despite the requirement in New York of counsel at arraignment and despite the fact that the Rockland County Public Defender has funding to ensure that defense counsel is present at every arraignment.  BOUTROS and PIERMONT denied Patrick his right to counsel at a critical stage of the criminal proceeding against him.  If counsel had been present at arraignment as required, an application could have been made for a more reasonable bail or release on recognizance.  If counsel had been present at arraignment as required, a motion could have been made to challenge the facial sufficiency of the illegal accusatory instruments filed by BOUTROS against Patrick.  If counsel had been present at arraignment as required, the damages suffered by Patrick could have been mitigated.

87.     Patrick later learned from his father that BOUTROS informed his father twice that it was not necessary for Patrick to have an attorney present for his arraignment, despite Patrick's

father's inquiry regarding same twice. New York requires that defendants actually be provided counsel at felony arraignments.

88.     Patrick also had inquired as to securing counsel for arraignment prior to the commencement of that proceeding and BOUTROS told Patrick that counsel was not necessary. This affirmative statement against securing counsel, combined with the strip search and visual cavity search and related illegal treatment he was forced to endure at the hands of BOUTROS did not leave Patrick in a reasonable position to challenge BOUTROS as to his statements about counsel because Patrick was frightened and dominated.

89.     The only people in the courtroom were the Judge, BOUTROS, and Patrick. Further, the Court in Piermont failed to record the proceedings despite being provided a recording device by the State's Office of Court Administration.  Patrick's father requested entry to be present during the arraignment but was denied access despite New York Office of Court Administration policy that court proceedings are open to the public.  BOUTROS told Patrick's father that entry was not permissible.

90.     Patrick was arraigned on the felony-level crime of Criminal Possession of a Weapon in the Second Degree (New York Penal Law §265.03-3), a separate misdemeanor charge of Unlawful Possession of Certain Ammunition Feeding Devices (New York Penal Law §265.37), and a speeding ticket (New York Vehicle and Traffic Law §1180D), and had no attorney provided by the municipal court or by any Defendant named herein for this critical stage of the criminal proceedings against him.

91.     Following the arraignment, Patrick's father posted the $5,000.00 bail. Prior to this occurring, Patrick was detained for approximately over 10 hours.

92.     Thereafter, the Defendant(s) paraded Patrick's felony arrest on Facebook and, upon information and belief, other social media despite the blatant frivolous nature of the felony charge (and misdemeanor as well) and included within such public posting, defamatory statements that

have tarnished Patrick's good name and stellar reputation.  Upon information and belief, said Facebook post was published to the community-at-large by Defendant(s), including but not limited to then-Chief Michael O'Shea.

93.     Said Facebook post read, "Last night at about 0100 a Piermont police officer observed a vehicle being operated on Route 9W in an erratic manner.  The driver Patrick Baker, 23 years old, of Scarsdale failed to comply with officers instructions while standing outside the vehicle during the traffic stop.  A further investigation revealed the driver (suspect) possessed a loaded firearm in his waistband with a round in the chamber.  Additionally he did violate the ammunition capacity ban.  He was arraigned by the Honorable John Gallucci.  Judge Gallucci set bail at $5,000.  Bail was posted and the suspect is due back in the Piermont Court on March 20, 2019."  The post included photographs of the firearm, its magazine, and ammunition.

94.  Said Facebook post includes several false statements, to wit: (a) there is no truth to the statement that the subject vehicle was being driven in an "erratic manner," (b) there is no truth to the statement that Patrick "failed to comply with officers instructions," (c) there was no "further investigation [that] revealed [Patrick] possessed a loaded firearm," as Patrick voluntarily advised the officer (in hopes of preventing an escalation of the incident or to raise concerns for the officer about officer safety) that he had a licensed firearm on his person, (d) the post omits the fact that Patrick had a license for his firearm and, as such, the post publishes a false and inaccurate account, (e) there is no truth to the statement that Patrick "did violate the ammunition capacity ban" because said statute was previously deemed unconstitutional and even if it had not been, Patrick was not yet determined to be guilty of anything; he was merely accused at that time and maintained a presumption of innocence.

95.     Several members of the public responded to the post by publishing comments including but not limited to, "…Another awesome stop…," "Thank God the officer is okay," "…crime has really been on the rise…," "Unreal, have respect for the police, do what your told, and for gods sake, do it legally.  Get a permit!!!"

96.     The false statements posted by Defendant(s) have defamed Patrick, tarnished his good name, damaged his stellar reputation, and have caused him shame, embarrassment, and humiliation.  Although the Defendants herein have knowledge that the criminal case terminated without a finding of guilt, said Facebook post and its accompanying photographs, and the public comments that ensued are/were still posted on PIERMONT and or its police department's public Facebook page as of at least the date this action commenced.

97.     Within a week of the felony arraignment, at the very next appearance after arraignment, the Rockland County District Attorney immediately recognized that the felony was charged improperly by BOUTROS and reduced the erroneous felony charge to Criminal Possession of a Weapon in the Fourth Degree (New York Penal Law § 265.01-1), a misdemeanor (that would later be dismissed).

98.     By this action, the District Attorney's office confirmed that a felony charge was never appropriate and or legally justified. Nonetheless, major damage was already done to Patrick's body, mental health and reputation.

99.     Patrick was forced to attend several court appearances in connection with the criminal charges against him.  When he arrived at the municipal court on each occasion, Patrick, like all other members of the public, was screened through security entering the courtroom by officers using a magnetometer "wand" as part of the screening process.  On one occasion, BOUTROS was present and when Patrick passed through security screening, BOUTROS targeted and or ambushed Patrick.  As BOUTROS approached Patrick, Patrick was fearful and or apprehensive.  BOUTROS then used his hands to personally pat down and or touch Patrick's body and did so in a manner that offensively touched Patrick's genitals and buttocks.  Other members of the public entering court that day were not searched in such a manner.  This was done to Patrick despite, upon information and belief, the wand being the routine method of screening.  This exacerbated Patrick's emotional distress as the person (BOUTROS) who performed the illegal strip search and visual cavity search upon him, was now also performing a full and completely

unnecessary pat down of his body when other officers routinely used a magnetometer wand.  Such action served no legitimate purpose and was only used as a mechanism for further humiliating, degrading, harassing, and annoying Patrick.

100.    As part of his criminal defense, a motion to dismiss was filed on behalf of Patrick. In the People's responsive papers, they conceded that dismissal was warranted as to the misdemeanors charges that were then pending against Patrick.  Thus, the People confirmed that the prosecution commenced by BOUTROS against Patrick lacked merit.

101.    Only after the People conceded that dismissal was warranted, the pending criminal case against Patrick was adjourned in contemplation of dismissal, *nunc pro tunc* to the date of arrest.  Patrick's criminal charges were dismissed and sealed on September 14, 2019.

102.    The particular facts and circumstances surrounding the dismissal are consistent with and indicative of Patrick's innocence as to the charges that were filed against him.  Thus, the prosecution terminated in Patrick's favor.

103.    Patrick suffered significant damages as a result of Defendants' actions, in that Patrick suffered an unlawful detention, loss of liberty, physical injuries/long-lasting pain and discomfort to his wrist, arm, and shoulder from being handcuffed to a wall with his arm raised over his head for several hours, emotional distress, fear, anxiety, humiliation, degradation, embarrassment, damage to his personal and professional reputation, and loss of business with potential customers, not to mention being forced to submit his naked body for inspection by BOUTROS.

104.    Upon information and belief, at no time since the revelation of the facts and circumstances above, have Defendant(s) taken any steps to remedy these wrongs either directly, indirectly, or in any other manner.

## AS AND FOR A FIRST CAUSE OF ACTION
### VIOLATION OF FIRST, FOURTH, FIFTH AND
### FOURTEENTH AMENDMENTS, AND 42 U.S.C. § 1983
### AGAINST BOUTROS
### *FOR ILLEGAL STRIP SEARCH AND VISUAL CAVITY SEARCH*

105.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 104

of this Complaint with the same force and effect as if fully set forth herein.

106.     At all times relevant, BOUTROS was and is a natural person and is sued in the

present action in such capacity.

107.     At all times relevant, BOUTROS acted under color of law in connection with and

by virtue of his employment as a police officer of a government entity, from which his

authority was and is derived.

108.     As enumerated herein, Patrick alleges violations of federal constitutional and

federally protected rights at the hands of BOUTROS.

109.     Throughout the events recited herein, BOUTROS, while acting under the color of

law, subjected Patrick to the deprivation of rights, privileges and immunities secured by

the Constitution and laws of the United States.

110.     As explained herein, Patrick has been deprived of his Constitutional rights which

has caused Patrick to suffer damages.

111.     The actions of BOUTROS in depriving Patrick of his Constitutional rights, as

stated herein, were willful and malicious acts.

112.     The illegal strip search and visual cavity search of Patrick, which was personally

conducted by BOUTROS, in his official and individual capacities, and under the color of

law, constitutes a violation of Patrick's constitutional rights.  Such actions by BOUTROS
are contrary to the protections afforded to Patrick by the First, Fourth, Fifth, and Fourteenth
Amendments as well as 42 U.S.C. § 1983.  While BOUTROS had a duty not to subject
Patrick to such illegal conduct, he breached such duty.

113.     BOUTROS violated Patrick's rights to physical liberty, bodily integrity, privacy
and freedom from unreasonable search and seizure when BOUTROS forced Patrick to
submit to a strip search of his naked body and visual cavity search without a reasonable
basis and in an unreasonable manner.  This violation of Patrick's rights was of a particularly
degrading nature.  Patrick's genitals and rectum were revealed and visible to BOUTROS
by the actions of BOUTROS.

114.     BOUTROS personally conducted the unreasonable and illegal strip and visual
cavity search in such a manner, and so as to, subject Patrick to humiliation, degradation
and embarrassment and in excess of his authority as a member of law enforcement.  In doing
so, BOUTROS exhibited deliberate indifference to the rights of Patrick.  BOUTROS'
actions in this regard are grossly negligent and reckless.

115.     The actions of BOUTROS were intentional, with BOUTROS knowing that he
violated Patrick's constitutional rights and, as such, warrant and justify the assessment and
award of compensatory and punitive damages.  In strip searching Patrick, BOUTROS was
objectively unreasonable under any definition or application of constitutional rights.  The
violation of Patrick's rights in this regard were clearly established at the time that the strip
search was performed.

116.     At all times relevant, Patrick was seized and not otherwise free to terminate the
encounter with BOUTROS based upon physical force exerted by and or a show of authority

demonstrated by BOUTROS.   Accordingly, Patrick's freedom of movement was terminated and or otherwise restrained/restricted by BOUTROS.

117.     BOUTROS failed to have any reasonable basis to believe that Patrick was concealing a weapon or other contraband in order to establish any reasonable basis for engaging in such an eggregiously intrusive and unconstitutional strip search and visual cavity search of Patrick's naked body.  Such unreasonable basis is compounded by the fact that many hours passed since the intial stop which makes the illegal strip search and visual cavity search even more unreasonable in nature.  Patrick was strip searched even though there was no individual suspicion that Patrick was secreting contraband on his person, even though there was no prison population that Patrick was entering, even though there was no legitimate felony charge that should have been brought against Patrick, even though Patrick has no criminal history, even though Patrick was at all times compliant and posed no threat to BOUTROS or any other person or thing, and even though he had his legally issued pistol permit on him and available for presentation to BOUTROS which BOUTROS disregarded.

118.     The illegal strip search was made even more eggregious as it was compounded by remarkably inappropriate, crude and unneccessarily degrading comments made by BOUTROS to Patrick during the strip search and visual cavity search which served no legitimate purpose other than to expose Patrick to enahnced degradation, humiliation, and belittlement.  This aspect of the underlying cause of action butresses Patrick's prayer for punitive damages.

119.     At all times relevant, Patrick had a reasonable expectation of privacy which BOUTROS violated.

120.     That by reason of the foregoing, Patrick has been damaged in the sum of ten million

($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.


## AS AND FOR A SECOND CAUSE OF ACTION

### VIOLATION OF FOURTH, FIFTH, AND FOURTEENTH

### AMENDMENTS AND 42 U.S.C. §1983

### AGAINST BOUTROS

### *FOR UNLAWFUL SEARCH AND SEIZURE*


121.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 120

of this Complaint with the same force and effect as if fully set forth herein.

122.     At all times relevant, BOUTROS was and is a natural person and is sued in the

present action in such capacity.

123.     At all times relevant, BOUTROS acted under color of law in connection with and

by virtue of his employment as a police officer of a government entity, from which his

authority was and is derived.

124.     As enumerated herein, Patrick alleges violations of federal constitutional and

federally protected rights at the hands of BOUTROS.

125.     Throughout the events recited herein, BOUTROS, while acting under the color of

law, subjected Patrick to the deprivation of rights, privileges and immunities secured by

the Constitution and laws of the United States.

126.     As explained herein, Patrick has been deprived of his Constitutional rights which

has caused Patrick to suffer damages.

127.     The actions of BOUTROS in depriving Patrick of his Constitutional rights, as stated herein, were willful and malicious acts.

128.     BOUTROS personally performed the illegal search and seizure of Patrick's person and items of personal property.   The unlawful arrest conducted against Patrick by BOUTROS, in his official and individual capacity, under color of law, constituted unreasonable search and seizure by BOUTROS as well as abuse of process, and violated Patrick's Fourth, Fifth, and Fourteenth Amendment rights as well as 42 U.S.C. §1983. Such actions were negligent, reckless, unreasonable and unauthorized, as BOUTROS had a duty not to subject Patrick to any unnecessary search and seizure, but failed to prevent the same (and in fact caused the same), and breached such duty.

129.     After being stopped for alleged speeding, Patrick provided to BOUTROS all of the documentation that was demanded of him by BOUTROS to wit, his license, registration, and insurance.   At that point, a speeding ticket should have been issued if in fact BOUTROS had requisite justification to issue such a citation, and sent Patrick on his way as there was no other indication of suspicion as to any other criminal activity afoot in any manner or to any degree, whatsoever.   The corresponding incident reports do not allege that BOUTROS saw something, smelled something, heard something, or in any other manner observed anything that would have justified further investigation by BOUTROS of Patrick.   Simply, the traffic stop should have concluded when Patrick provided to BOUTROS his license, registration, and proof of insurance.   BOUTROS' subsequent actions lacked probable cause and as such, are illegal.

130.     As a consequence of BOUTROS's wrongful actions, negligent behavior and violations of the aforesaid federal rights, Patrick was deprived of his freedom, was subjected to great fear, terror, personal humiliation and degradation, and suffered great mental and emotional distress as a result of the aforesaid unlawful conduct of BOUTROS.

131.    BOUTROS failed to have any reasonable basis to believe that Patrick was concealing a weapon or other contraband in order to establish a reason for a warrantless search of Patrick's person and items of personal property. Patrick and his belongings were searched even though there was no individual suspicion that Patrick was secreting contraband on his person or within his personal property, even though no contraband was ever discovered on Patrick or in his vehicle, even though Patrick was interrogated for hours, sometimes with handcuffs on and sometimes not, even though BOUTROS was made aware that Patrick was a business owner and law abiding citizen who had no criminal record whatsoever, and even though the issue of whether or not someone was carrying a licensed firearm outside of the restrictions of a pistol permit is an administrative matter that is not prosecuted under the Penal Law according to a New York Court of Appeals decision from 1998. See People v. Thompson, 92 N.Y.2d 957 (1998).

132.    At all times relevant, Patrick was seized and not otherwise free to terminate the encounter with BOUTROS based upon physical force exerted by and or a show of authority demonstrated by BOUTROS.  Accordingly, Patrick's freedom of movement was terminated and or otherwise restrained/restricted by BOUTROS.

133.    At all times relevant, Patrick had a reasonable expectation of privacy which BOUTROS violated.

134.    At no time relevant did BOUTROS seek consent for any of his illegal actions.

135.    At no time relevant did Patrick ever consent to any of BOUTROS' illegal actions.

136.    That by reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION

**VIOLATION OF FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS,**

**AND 42 U.S.C. § 1983**

## AGAINST BOUTROS

### *FOR EXCESSIVE FORCE*

137.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 136

of this Complaint with the same force and effect as if fully set forth herein.

138.     At all times relevant, BOUTROS was and is a natural person and is sued in the

present action in such capacity.

139.     At all times relevant, BOUTROS acted under color of law in connection with and

by virtue of his employment as a police officer of a government entity, from which his

authority was and is derived.

140.     As enumerated herein, Patrick alleges violations of federal constitutional and

federally protected rights at the hands of BOUTROS.

141.     Throughout the events recited herein, BOUTROS, while acting under the color of

law, subjected Patrick to the deprivation of rights, privileges and immunities secured by

the Constitution and laws of the United States.

142.     As explained herein, Patrick has been deprived of his Constitutional rights which

has caused Patrick to suffer damages.

143.     The actions of BOUTROS in depriving Patrick of his Constitutional rights, as

stated herein, were willful and malicious acts.

144.     The specific facts and circumstances enumerated above, and entirely incorporated herein, as to the manner of handcuffing, the illegal strip search and visual cavity search, and physical pat-down at the municipal court, reveal and allege actions by BOUTROS personally that are unreasonable and constitute excessive force by BOUTROS against Patrick.

145.     There was no probable cause to arrest Patrick for any serious crime.

146.     Patrick posed absolutely no threat, let alone an immediate threat, to BOUTROS or anyone else.  Quite to the contrary, Patrick was cooperative, gentlemanly, and forthcoming.

147.     There were no allegations by BOUTROS that Patrick actively resisted arrest or attempted to evade arrest by flight.

148.     Balancing BOUTROS' "need" to handcuff Patrick, with the manner in which Patrick was actually handcuffed, leads a reasonable person to conclude that BOUTROS exerted excessive force against Patrick.

149.     Balancing BOUTROS' "need" to "search" Patrick, with the manner in which Patrick was strip searched and further subjected to a visual cavity search, leads a reasonable person to conclude that BOUTROS exerted excessive force against Patrick.

150.     As to the strip search, visual cavity search, pat-down, and method of handcuffing, there were, at all times relevant, less restrictive means immediately and actually available to BOUTROS.   A reasonable person would thus conclude that BOUTROS exerted excessive force against Patrick.

151.     That by reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## AS AND FOR A FOURTH CAUSE OF ACTION

### VIOLATION OF FOURTH, FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS, AND 42 U.S.C. §1983

### AGAINST BOUTROS

### *FOR FALSE ARREST*

152.    Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 151 of the Complaint with the same force and effect as if fully set forth herein.

153.    At all times relevant, BOUTROS was and is a natural person and is sued in the present action in such capacity.

154.    At all times relevant, BOUTROS acted under color of law in connection with and by virtue of his employment as a police officer of a government entity, from which his authority was and is derived.

155.    As enumerated herein, Patrick alleges violations of federal constitutional and federally protected rights at the hands of BOUTROS.

156.    Throughout the events recited herein, BOUTROS, while acting under the color of law, subjected Patrick to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States.

157.    As explained herein, Patrick has been deprived of his Constitutional rights which has caused Patrick to suffer damages.

158.    The actions of BOUTROS in depriving Patrick of his Constitutional rights, as stated herein, were willful and malicious acts.

159.    After being stopped for alleged speeding, Patrick provided to BOUTROS all of the documentation that was demanded of him by BOUTROS to wit, his license, registration, and insurance.    At that point, a speeding ticket should have been issued if in fact

BOUTROS had requisite justification to issue such a citation, and sent Patrick on his way as there was no other indication of suspicion as to any other criminal activity afoot in any manner or to any degree, whatsoever.  The corresponding incident reports do not allege that BOUTROS saw something, smelled something, heard something, or in any other manner observed anything that would have justified further investigation by BOUTROS of Patrick.  Simply, the traffic stop should have concluded when Patrick provided to BOUTROS his license, registration, and insurance.  BOUTROS' subsequent actions lacked probable cause and as such, are illegal.

160.    The arrest of Patrick was not based upon probable cause and as such it was unlawful, illegal, unjustified, and lacked privilege. The accusations of wrongful/ criminal conduct against Patrick were improper and false, and were an attempt to disguise the Defendants' animosity towards Patrick, causing a deprivation of his rights, privileges and/or immunities secured by the Constitution and the laws of this nation and state.

161.    Under the color of law, BOUTROS deprived Patrick of his Fifth, Sixth, Eighth and Fourteenth Amendment rights not to be deprived of life, liberty or property without due process of law, and of his Fourth Amendment right to be free from unlawful searches and seizures by falsely arresting, wrongfully detaining, unlawfully harassing, unconstitutionally conducting a humiliating  and degrading strip search, and falsely charging Patrick with a felony for which there was no evidence or substantiation of any kind whatsoever and a misdemeanor that was previously deemed unconstitutional. Because Patrick had a pistol permit, any issue as to whether he is abiding by pistol permit restrictions is resolved as an administrative matter and not prosecuted pursuant to the Penal Law.

162.    The accusations of wrongful actions/crimes charged against Patrick were false and an attempt to cover up the false arrest and abuse of process which had been inflicted by BOUTROS upon Patrick.

163.     BOUTROS lacked even arguable probable cause to arrest Patrick on a felony and the charged misdemeanor.

164.     Such actions were intentional, negligent, reckless, callous, unreasonable and/or unauthorized, as BOUTROS had a duty not to subject Patrick, a civil member of the public and citizen of this nation, to the use of excessive force by handcuffing Patrick for hours to a wall with his one arm elevated over his head, conducting an unlawful, degrading and humiliating strip search, false arrest and summary punishment, but failed to prevent the same, and in fact caused the same, all in violation of 42 U.S.C. § 1983.

165.     BOUTROS acted under color of law to deny Patrick his constitutional rights of due process and freedom from seizure by intentionally confining him without his consent under the threat of imprisonment without providing any reasonable basis or investigation warranting prosecution, or other due process guarantees secured to Patrick.

166.     BOUTROS detained Patrick without any probable cause, therefore abusing proper legal authority.

167.     As a consequence of BOUTROS' wrongful actions, negligent behavior, and violations of federal and state laws, Patrick was deprived of his freedom, made to suffer injuries, and subjected to great fear, terror, personal humiliation and degradation.

168.     At all times relevant, BOUTROS intended to confine and or restrict/restrain Patrick.

169.     At all times relevant, Patrick was in-fact confined and or restricted/restrained.

170.     At all times relevant, Patrick was conscious of the confinement and or restriction/restraint.

171.     At no time relevant did Patrick consent to such confinement and or restriction/restraint.

172.     At no time relevant was the confinement and or restriction/restraint of Patrick privileged.

173.     At no time relevant did BOUTROS seek consent for any of his illegal actions.

174.     At no time relevant did Patrick ever consent to any of BOUTROS' illegal actions.

175.     That by reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.


## AS AND FOR A FIFTH CAUSE OF ACTION

### VIOLATION OF FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, AND 42 U.S.C. §1983

### AGAINST BOUTROS

### *FOR FALSE IMPRISONMENT*


176.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 175 of this Complaint with the same force and effect as if fully set forth herein.

177.     At all times relevant, BOUTROS was and is a natural person and is sued in the present action in such capacity.

178.     At all times relevant, BOUTROS acted under color of law in connection with and by virtue of his employment as a police officer of a government entity, from which his authority was and is derived.

179.     As enumerated herein, Patrick alleges violations of federal constitutional and federally protected rights at the hands of BOUTROS.

180.     Throughout the events recited herein, BOUTROS, while acting under the color of law, subjected Patrick to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States.

181.     As explained herein, Patrick has been deprived of his Constitutional rights which has caused Patrick to suffer damages.

182.     The actions of BOUTROS in depriving Patrick of his Constitutional rights, as stated herein, were willful and malicious acts.

183.     After being stopped for alleged speeding, Patrick provided to BOUTROS all of the documentation that was demanded of him by BOUTROS to wit, his license, registration, and insurance.    At that point, a speeding ticket should have been issued if in fact BOUTROS had requisite justification to issue such a citation, and sent Patrick on his way as there was no other indication of suspicion as to any other criminal activity afoot in any manner or to any degree, whatsoever.  The corresponding incident reports do not allege that BOUTROS saw something, smelled something, heard something, or in any other manner observed anything that would have justified further investigation by BOUTROS of Patrick.  Simply, the traffic stop should have concluded when Patrick provided to BOUTROS his license, registration, and insurance.  BOUTROS' subsequent actions lacked probable cause and as such, are illegal.

184.     The accusations of wrongful/criminal conduct against Patrick were improper and false, and were an attempt to disguise the Defendants, animosity towards Patrick, causing a deprivation of his rights, privileges and/or immunities secured by the Constitution and laws of this nation and state.

185.     BOUTROS lacked probable cause to arrest or detain Patrick in prolonged physical custody for a period of approximately over ten (10) hours commencing on or about March 14, 2019.

186.     The wrongful arrest and wrongful detention of Patrick by BOUTROS was committed under color of law.

187.     BOUTROS acted under color of the law to deny Patrick his Constitutional rights to equal protection, due process and freedom from seizure by wrongfully detaining Patrick at the PIERMONT PD headquarters, and wrongfully charging him with a felony and misdemeanor and holding him under the threat of and actual imprisonment for approximately over ten (10) hours, without providing a reasonable basis and/or investigation warranting custody, or other due process guarantees secured to Patrick by the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

188.     Such violations were continued by BOUTROS in his refusal to adequately investigate Patrick's pistol permit that he possessed at the time he was detained. Specifically, BOUTROS failed to investigate and verify the veracity of Patrick's claim that he had a valid pistol permit for his firearm, even though the permit was in Patrick's possession at the time of his arrest, and that he was fishing on the day of his arrest. Further, BOUTROS lacked knowledge/awareness of the long-settled, well-established laws that he was charged with upholding. BOUTROS should have known that the issue of whether someone was allegedly carrying a licensed firearm outside of the restrictions of a pistol permit is an administrative matter that is not prosecuted under the Penal Law according to a New York Court of Appeals case from 1998. See People v. Thompson, 92 N.Y.2d 957 (1998).

189.     When Patrick was pulled over on Route 9W following the alleged traffic infraction, he had to endure harassment and threats, followed by questioning and interrogation without an attorney present and all before being painfully handcuffed and arrested and then subsequently stripped naked.

190.     Despite the information known to BOUTROS at the time of Patrick's arrest, BOUTROS willfully detained Patrick, handcuffed him, strip searched him, humiliated and

degraded him at the PIERMONT PD headquarters, and did not provide an explanation for what he was charged with, and advised Patrick's father that despite falsely charging Patrick with a felony and misdemeanor, he did not need an attorney at the arraignment (despite a clear New York Court of Appeals mandate to the contrary).

191.     BOUTROS never offered to free Patrick, Patrick was conscious and aware of his confinement and unlawful imprisonment, and never consented to same.

192.     Although BOUTROS made the arrest of Patrick under color of law, BOUTROS lacked the authority of law to do so—there was no probable cause or reasonable suspicion to take Patrick into custody, particularly in a felony context. Again, any issue as to whether someone is handling a firearm outside the restrictions of the individual's pistol permit is an administrative matter and not one prosecuted under the New York State Penal Law. See People v. Thompson, 92 N.Y.2d 957 (1998).

193.     As a consequence of BOUTROS' wrongful actions, negligent behavior, and violations of law, Patrick was deprived of his freedom, made to suffer injuries, and was subjected to great fear, terror, personal humiliation and degradation, long-lasting physical pain from being handcuffed to a wall with his arm elevated over his head for several hours, and still continues to suffer mental and emotional distress, loss of customers for his business, loss of prospective customers, the forced presentation of his naked body to law enforcement, degradation of his good name—all as a result of the aforesaid unlawful conduct of BOUTROS.

194.     At all times relevant, BOUTROS intended for Patrick to be arrested, seized, and confined.

195.     At all times relevant, Patrick was arrested, seized, and confined.

196.     At all times relevant, Patrick was conscious of the arrest, seizure, and confinement.

197.     At no time relevant did Patrick consent to such arrest, seizure, or confinement.

198.     At no time relevant was the arrest, seizure, or confinement of Patrick otherwise

privileged.

199.     At all times relevant, Patrick was in-fact falsely imprisoned.

200.     At no time relevant did BOUTROS seek consent for any of his illegal actions.

201.     At no time relevant did Patrick ever consent to any of BOUTROS' illegal actions.

202.     That by reason of the foregoing, Patrick has been damaged in the sum of ten million

($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## AS AND FOR A SIXTH CAUSE OF ACTION
### VIOLATION OF FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS,
### AND 42 U.S.C. § 1983
### AGAINST BOUTROS
### *FOR DEPRIVATION OF THE RIGHT TO COUNSEL*

203.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 202

of this Complaint with the same force and effect as if fully set forth herein.

204.     At all times relevant, BOUTROS was and is a natural person and is sued in the

present action in such capacity.

205.     At all times relevant, BOUTROS acted under color of law in connection with and

by virtue of his employment as a police officer of a government entity, from which his

authority was and is derived.

206.     As enumerated herein, Patrick alleges violations of federal constitutional and

federally protected rights at the hands of BOUTROS.

207.       Throughout the events recited herein, BOUTROS, while acting under the color of

law, subjected Patrick to the deprivation of rights, privileges and immunities secured by

the Constitution and laws of the United States.

208.       As explained herein, Patrick has been deprived of his Constitutional rights which

has caused Patrick to suffer damages.

209.       The actions of BOUTROS in depriving Patrick of his Constitutional rights, as stated

herein, were willful and malicious acts.

210.       It is a well-settled, basic, fundamental right that criminally accused defendants have

a right to counsel at all critical stages of a criminal proceeding.

211.       At all times relevant, Patrick was a criminally accused Defendant.

212.       Patrick was arraigned on the criminal charges filed against him.  Said arraignment

was in-fact a criticial stage of the proceedings in which his liberty and freedom were at

issue.  Bail was set against Patrick's liberty interests and no applications were made on his

behalf in any regard or for any purpose.

213.       At no time relevant was any attorney provided for Patrick despite crystal clear

mandates to the contrary from the New York State Court of Appeals that all criminally

accused Defendants, including, at that time, Patrick, be provided an attorney.  In fact,

Rockland County has, upon information and belief, received funds from the State of New

York to ensure that counsel is present at all arraignments, including in the PIERMONT

municipal court. Such funding has enabled the Rockland County Public Defender's Office

to maintain on-call attorneys in the off-hours to appear in municipal courts when

arraignments are to occur. Accordingly, in New York, and particularly in Rockland

County, criminally accused Defendants need not specifically request counsel; instead, counsel is to be provided automatically.

214.     Upon inquiry of BOUTROS by Patrick and or his father regarding the right to counsel at arraignment, Patrick was caused to believe that counsel was not necessary and was otherwise swayed not to seek the aide of counsel  and was also, otherwise, in essence, denied and or deprived of his right to counsel notwithstanding his clearly established rights under the United States Constitution, the New York State Constitution, and New York State statute and law.

215.     BOUTROS' words, behavior, actions, and or omissions constitute direct involvement in the deprivation of the right to counsel.

216.     As a result, Patrick was caused to suffer damages as alleged above and herein.

217.     By reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.


## AS AND FOR AN SEVENTH CAUSE OF ACTION
**VIOLATION OF FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS,**
**AND 42 U.S.C. § 1983**
**AGAINST BOUTROS**
***FOR MALICIOUS PROSECUTION***


218.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 217 of this Complaint with the same force and effect as if fully set forth herein.

219.     At all times relevant, BOUTROS was and is a natural person and is sued in the present action in such capacity.

220.     At all times relevant, BOUTROS acted under color of law in connection with and by virtue of his employment as a police officer of a government entity, from which his authority was and is derived.

221.     As enumerated herein, Patrick alleges violations of federal constitutional and federally protected rights at the hands of BOUTROS.

222.     Throughout the events recited herein, BOUTROS, while acting under the color of law, subjected Patrick to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States.

223.     As explained herein, Patrick has been deprived of his Constitutional rights which has caused Patrick to suffer damages.

224.     The actions of BOUTROS in depriving Patrick of his Constitutional rights, as stated herein, were willful and malicious acts.

225.     After being stopped for alleged speeding, Patrick provided to BOUTROS all of the documentation that was demanded of him by BOUTROS to wit, his license, registration, and insurance.    At that point, a speeding ticket should have been issued if in fact BOUTROS had requisite justification to issue such a citation, and sent Patrick on his way as there was no other indication of suspicion as to any other criminal activity afoot in any manner or to any degree, whatsoever.   The corresponding incident reports do not allege that BOUTROS saw something, smelled something, heard something, or in any other manner observed anything that would have justified further investigation by BOUTROS of Patrick.   Simply, the traffic stop should have concluded when Patrick provided to

BOUTROS his license, registration, and insurance.  BOUTROS' subsequent actions lacked probable cause and as such, are illegal.

226.    The allegations above, which are fully incorporated here, demonstrate that BOUTROS initiated the prosecution against Patrick in that BOUTROS authored and swore to the charges he filed against Patrick, not only had Patrick arraigned on said charges but directly coordinated and facilitated the actual arraignment and was, at all times relevant, present for such proceeding, and negotiated the bail that was eventually ordered by the municipal court judge who presided at arraignment.  In all regards, BOUTROS was seeking out the prosecution of Patrick.  All of this, notwithstanding a lack of probable cause to have arrested Patrick in the first place on the charges BOUTROS facilitated.

227.    The prosection which BOUTROS initiated was commenced with and motivated by actual malice.  Under no reasonable interpretation of the facts and circumstance alleged herein could BOUTROS' initiation of the prosecution against Patrick be seen as a desire to see the ends of justice served.

228.    Throughout the prosecution initiated by BOUTROS, Patrick maintained the status of a criminally accused Defendant, was required to post bail, needed to hire criminal defense attorneys to defend him, and make several court appearances.

229.    As noted above, the case was commenced by BOUTROS, despite a lack of probable cause and legal justification, as a felony.

230.    As noted above, that erroneous felony charge was reduced to a misdemenanor charge by the People within a week of arraignment because the felony brought against Patrick by BOUTROS was not sustainable.

231.    As part of his criminal defense pertaining to the misdemeanor that yielded when the People made their reduction from a felony, a motion to dismiss was filed on behalf of Patrick.  In the People's responsive papers, they conceded that dismissal was warranted as to the misdemeanors charges that were then pending against Patrick.  Thus, the People confirmed that the prosecution commenced by BOUTROS against Patrick lacked merit.

232.    Only after the People conceded that dismissal was warranted, the pending criminal case against Patrick was adjourned in contemplation of dismissal, *nunc pro tunc* to the date of arrest.  Patrick's criminal charges were dismissed and sealed on September 14, 2019.

233.    The particular facts and circumstances surrounding the dismissal are consistent with and indicative of Patrick's innocence as to the charges filed against him.  Thus, the prosecution terminated in Patrick's favor.

234.    Patrick suffered significant damages as a result of Defendants' actions, in that Patrick suffered an unlawful detention, loss of liberty, physical injuries/long-lasting pain and discomfort to his wrist, arm, and shoulder from being handcuffed to a wall with his arm raised over his head for several hours, emotional distress, fear, anxiety, humiliation, degradation, embarrassment, damage to his personal and professional reputation, and loss of business with potential customers, not to mention being forced to submit his naked body for inspection by BOUTROS.

235.    Patrick suffered a post-arraignment deprivation of liberty to such an extent that the Fourth Amendment rights of Patrick were violated.

236.    That by reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

**VIOLATION OF FIRST, FOURTH, FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS, AND 42 U.S.C. §1983**

**AGAINST PIERMONT**

*MONELL CLAIM / MUNICIPAL LIABILITY*

237.      Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 236 of the Complaint with the same force and effect as if fully set forth herein.

238.      This Monell claim is premised on actual constitutional violations and the specific facts alleged demonstrate and establish that PIERMONT is at fault by virtue of its municipal policies, customs, and practices or lack thereof.  The violations of Patrick's constitutional rights were affirmatively and proximately caused by policies, procedures, customs, and practices of PIERMONT.  By actively inflicting and failing to prevent the above stated constitutional violations suffered by Patrick, PIERMONT, by virue of its municipal policies, customs, and practices, acted unreasonably, recklessly, and or negligently in failing to exercise the slightest amount of due care to secure and protect the civil and Constitutional rights of Patrick against illegal search and seizure, physical abuse, detained custody and other due process violations. Said rights are guaranteed to Patrick by 42 U.S.C. §1983, and by the Amendments to the United States Constitution enumerated herein.

239.      Specifically, PIERMONT requires that strip and visual cavity searches be perfomed upon members of the public and empowers its employees to unilaterally, and singularly, make such determination without supervision or checks and balances, and upon purported justification that is inconsistent with prevailing law.  This allegation is specifically

supported by specific allegations within the factual portion of this First Amended Complaint wherein BOUTROS stated to Patrick that the strip and visual cavity were <u>required</u>.  The allegation that BOUTROS was <u>required</u> to perform the strip and visual cavity search supports a finding that BOUTROS was obeying a policy, custom, and or practice of PIERMONT, his municipal employer.

240.     Specifically, PIERMONT has an after-hour arraignment policy, custom, and or practice that does not include and or require activating the publicly-funded and available "on-call" Rockland County Public Defender who is specifically designated to appear on behalf of criminally accused persons, county-wide, in direct violation of prevailing New York State law.  This allegation is specifically supported by specific allegations within the factual portion of this First Amended Complaint. The allegation that the arraignemnt did in-fact proceed without counsel supports a finding that PIERMONT's arraignment policy, custom, and or practice is illegal.

241.     Specifically, PIERMONT restricts bail to be posted in only one form, while New York State law requires that bail be permitted in more than one form.  This allegation is specifically supported by specific allegations within the factual portion of this First Amended Complaint. The allegation that BOUTROS told Patrick that bail was <u>required</u> to be posted in cash <u>only</u>, supports a finding that BOUTROS was communicating a policy, custom, and or practice of PIERMONT, his municipal employer.

242.     Specifically, PIERMONT has a deficient custom, policy, and or practice as to disseminating information to the public.  This allegation is specifically supported by specific allegations within the factual portion of this First Amended Complaint.  The allegation that false information was published to the community about Patrick and never

corrected subsequently, supports a finding that PIERMONT has a custom, policy, and or practice as to public communications that does not provide for verification of information for accuracy, vetting, and similar protective measures.

243.     Specifically, PIERMONT has a policy, custom and or practice that does not require the recording of court proceedings despite New York State Office of Court Administration guidelines and protocols to the contrary, and equipment provided by the State to PIERMONT, to ensure compliance with such guidelines and protocols. This allegation is specifically supported by specific allegations within the factual portion of this First Amended Complaint. Patrick's arraignment was not recorded because PIERMONT, upon information and belief, does not record, at a minimum, its after-hour court proceedings.

244.     Specifically, PIERMONT has a policy, custom and or practice that does not permit public entry into court proceedings that are otherwise required to be publicly accessible pursuant to clear New York State Office of Court Adminstration policy. This allegation is specifically supported by specific allegations within the factual portion of this First Amended Complaint. The allegation that Patrick's father was told by BOUTROS that his entry into the arraignment was not permissible, supports a finding that BOUTROS was following a custom, policy and or practice of his municipal employer.

245.     As a proximate cause of PIERMONT's policies, customs, and or practices, as specifically stated herein, Patrick was caused to suffer damages.

246.     PIERMONT is liable by virtue of its policies, customs, and practices, or lack/absence thereof, but also by inferred customs, policies, and practices so as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, including, at all times relevant, Patrick.

247.     That by reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## AS AND FOR AN NINTH CAUSE OF ACTION
### A PENDENT CLAIM
### AGAINST PIERMONT AND BOUTROS
*FOR NEW YORK STATE ASSAULT AND BATTERY*

248.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 247 of this Complaint with the same force and effect as if fully set forth herein.

249.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1367.

250.     Defendant(s) placed Patrick in imminent fear and or apprehension of unwanted physical contact by, among other things, ordering Patrick to strip and bend over to examine his annus and or actually examining among other things, his annus.

251.     Defendant(s) placed Patrick in imminent fear and or apprehension of unwanted physical contact by offensively touching Patrick's genitals and buttocks without consent.

252.     Defendant(s) inflicted unwanted sexually-oriented and or sexual-in-nature and or dominating and or over-powering touching and or other offensive physical contact upon Patrick's person and exposed Patrick to other offensive contact and placed him in immediate fear and or apprehension of receiving such touching and physical contact.

253.     Defendant(s) did intend to inflict personal injury and or offensive touching upon Patrick without his consent.

254.     Defendant(s) took action to carry out the aforesaid intent.

255.     Defendant(s) did injure Patrick.

256.     All of the above actions placed Patrick in imminent fear and or apprehension of unwanted physical contact and or offensive physical contact.

257.     At no time did Patrick consent to the unlawful actions of the Defendant(s).

258.     As a direct and proximate result of these attacks and or offensive touchings and or threats of attacks and or offensive touching, Patrick was caused to suffer bodily injury and extreme emotional trauma all to his detriment.

259.     Defendant(s) intentionally assaulted and battered Patrick causing him to endure physical injury, harm, humiliation, shame, fear, apprehension, anxiety, emotional distress and emotional trauma.

260.     At all times relevant, BOUTROS was an employee of PIERMONT.

261.     That by reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## AS AND FOR A TENTH CAUSE OF ACTION

### A PENDENT CLAIM

### AGAINST BOUTROS, O'SHEA, and JOHN DOE

### *FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

262.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 261 of this Complaint with the same force and effect as if fully set forth herein.

263.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1367.

264.     Defendant(s) acted intentionally and recklessly in their harassing and discriminatory treatment and activity towards Patrick. Furthermore, Defendant(s) acted in concert with one another and conspired to violate the rights of Patrick and otherwise harm Patrick.

265.     Defendant(s)' harassment and threats toward Patrick were extreme and outrageous.

266.     A severe, if not gross interference with Patrick's privacy occurred on March 14, 2019 when Defendant BOUTROS conducted a visual inspection of Patrick's body cavity in a strip search.

267.     On March 14, 2019 Patrick experienced a stranger peering without his consent at his naked body and in particular at the most private portions of his body.   Patrick subsequenlty suffered an unnecessary pat-down of his body by BOUTROS in which Patrick's genitals and buttocks were touched in an offensive manner.

268.     As a direct result of BOUTROS' conduct, Patrick has suffered severe emotional distress directly caused by Defendant(s)' actions.

269.     Said emotional harm was exacerbated by the fact that Defendant(s)' activities involved the use of threatening and intimidating statements and other tactics of intimidation. Defendant(s) acted in concert with one another and conspired to violate his rights and otherwise harm Patrick.

270.     Said emotional harm was exacerbated by the Defendant(s)' defamation of Patrick's good name and reputation as complained of herein.

271.     Patrick suffered and was damaged by intentional infliction of emotional distress at the hands of Defendant(s) and same were a direct result of the Defendant(s) conduct.

272.     Defendant(s) acted in a manner against Patrick that constitutes conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

273.     Defendant(s) acted in a manner against Patrick that is regarded as atrocious and utterly intolerable in a civilized community.

274.     By reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## AS AND FOR A ELEVENTH CAUSE OF ACTION

### A PENDENT CLAIM

### AGAINST ALL DEFENDANTS

### *FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS*

275.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 274 of this Complaint with the same force and effect as if fully set forth herein.

276.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1367.

277.     Defendant(s) negligently and recklessly caused Patrick to suffer emotional distress.

278.     Defendant(s) owed a duty to Patrick, a free member of society with rights to be within the jurisdiction and municipal boundaries of PIERMONT, by virtue of their role in society as a municipal government, law enforcement agency, and police officer.

279.     Defendant(s) breached this duty by unreasonably endangering the physical safety of Patrick and or causing Patrick to fear for his safety.

280.     Defendant(s) acted in a manner that constitutes conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

281.     Defendant(s) acted in a manner that can and is regarded as atrociuous and utterly intolerable in a civilized community.

282.     Patrick suffered and was damaged by negligent infliction of emotional distress at the hands of the Defendant(s) and same was a direct result of the Defendant(s) conduct.

283.     As a direct and proximate result of Defendant(s) aforementioned conduct, Patrick was damaged and suffered economic losses, mental and emotional harm, anguish, and humiliation.

284.     By reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.


## AS AND FOR A TWELFTH CAUSE OF ACTION

### A PENDENT CLAIM

### AGAINST PIERMONT AND O'SHEA

### *FOR NEGLIGENT HIRING, SUPERVISION, TRAINING, AND RETENTION*

285.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 284 of this Complaint with the same force and effect as if fully set forth herein.

286.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1367.

287.      PIERMONT and O'SHEA had a duty to Patrick in that they had a duty to employ police officers that upheld the law and did not violate State or Constitutional rights.  Said duty was breached by PIERMONT and O'SHEA and proximately caused Patrick to suffer damages complained of herein.

288.      On or about March 14, 2019, BOUTROS was employed and or supervised and or trained and or retained by PIERMONT and O'SHEA.

289.      On or about March 14, 2019, BOUTROS was in his official capacity as a police officer when he encountered Patrick during a routine traffic stop.

290.      During that encounter, BOUTROS conducted an illegal search and seizure of Plaintiff and subjected him to an unnecessary and unlawful strip and visual cavity search conducted to humilate and degrade Patrick.

291.      The wrongful acts of BOUTROS reveal that PIERMONT and O'SHEA negligently hired, trained, supervised and or retained BOUTROS.

292.      PIERMONT and O'SHEA should have been aware that BOUTROS had a civil complaint(s) filed against him prior to his employment by PIERMONT and O'SHEA.

293.      Despite this knowledge, PIERMONT and O'SHEA hired and retained BOUTROS as a police officer.

294.      PIERMONT and O'SHEA had a duty not to hire an incompetent police officer.

295.      Furthermore, the illegal search and seizure and the illegal strip search took place at the headquarters of PIERMONT and OSHEA's police department.

296.      PIERMONT and O'SHEA also negligently supervised BOUTROS in that there was no supervision of BOUTROS as no other police officer nor any supervising officer was

present for the strip search conducted on Patrick on March 14, 2019, which is a proximate cause of Patrick's injuries.

297. As a result of direct negligence on the part of PIERMONT and O'SHEA, Patrick suffered emotional distress.

298. PIERMONT and O'SHEA placed its employees, including BOUTROS, in a position to cause foreseeable harm, harm which Patrick most probably would have been spared had PIERMONT and O'SHEA taken reasonable care in making its decisions concerning the hiring, training, supervision, and retention of its employees.

299. PIERMONT and O'SHEA knew, or should have known, of its employees, including BOUTROS, propensity for the sort of conduct which caused the injuries and damages suffered by Patrick.

300. Based upon the foregoing, PIERMONT and O'SHEAD were negligent in the hiring, training, supervision, and retention of BOUTROS by failing to remedy BOUTROS's illegal actions and conditions of employment after due notice.

301. Following Patrick's unlawful arrest and the outrageous events that ensued, including the illegal strip search and visual cavity search, reports were filed with PIERMONT and O'SHEA by BOUTROS  which placed PIERMONT and O'SHEA on notice of the illegal actions of BOUTROS.  Such illegal actions were never remedied despite due notice.

302. As a direct and proximate result of PIERMONT and O'SHEA's aforementioned conduct, Patrick was damaged and suffered economic losses, mental and emotional harm, anguish, and humiliation.

303.    As a result of these wrongful, negligent and intentional acts and violations, Patrick

suffered severe and extreme emotional distress and conscious pain and suffering.

304.    By reason of the foregoing, Patrick has been damaged in the sum of ten million

($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

### A PENDENT CLAIM

### AGAINST PIERMONT AND O'SHEA

*FOR LIABILITY UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR
AND NEW YORK COMMON LAW*

305.    Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 304

of this Complaint with the same force and effect as if fully set forth herein.

306.    This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1367.

307.    The conduct of BOUTROS occurred while he was on duty, in and during the course

and scope of his duties and functions as a Piermont Police Officer, and while he was acting

as an agent and employee of PIERMONT and O'SHEA.  As a result, PIERMONT and

O'SHEA are legally and vicariously rersponsible and liable to Patrick for the harm caused

to him by the conduct of BOUTROS under the doctrine of respondeat superior.

308.     By reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

### A PENDENT CLAIM

### AGAINST ALL DEFENDANTS

### *FOR DEFAMATION / DEFAMATION PER SE*

309.     Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 308 of this Complaint with the same force and effect as if fully set forth herein.

310.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1367.

311.     This cause of action arises out of and for damages sustained by Patrick with regard to false, libelous, and defamatory written statements made by Defendant(s) in and about PIERMONT and or its Police Department's offical Facebook webpage.

312.     Specifically, on or about March 14, 2019, Defendant(s) made the above alleged defamatory statements about Patrick that were false, published, and unprivileged.  The specific statements alleged above and herein are incorporated here as if reprinted in their entirety.

313.     Upon information and belief, Defendant(s) made such statements for improper purposes with malice and recklessness and with knowledge that they would be published

to the community at large, including Patrick's family, friends, aquaintenances, business associates, customers, and others.

314.     Such actions constitute defamation.

315.     Defendant(s) portrayed Patrick in the above-described manner knowing that their depiction was false and untrue and or with reckless and wanton disregard for the truth.

316.     The false and defamatory statements made by Defendant(s) have caused Patrick great anguish, emotional distress, economic loss, and have exposed him to pre-judgments and false judgments which have injured Patrick's credibility, name, and reputation both within and beyond his personal and professional life.

317.     Such defamatory statements tend to expose Patrick to hatred, disdain, contempt or aversion, or to induce evil or unsavory opinions of him in the minds of a substantial number of community members.

318.     Since Defendant(s) defamatory statements, both expressly and by implication, are ones that would tend to harm the reputation of Patrick and or deter third persons from associating with Patrick in the conduct of his profession and personal social life while also exposing him to public contempt, ridicule, aversion, and disgrace, Patrick is presumed to have suffered injury and damages and Defendant(s) have thus committed defamation per se.

319.     Defendant(s)' statements, further, both expressly and by implication, are defamatory per se.

320.     As a direct and proximate result of the aforementioned acts by Defendant(s), Patrick has been caused to suffer damages which include but are not limited to general and specific

damages in an amount not presently known but subsequently ascertainable and believed to

be not less than ten million dollars ($10 million dollars) including damages to, among other

things, Patrick's reputation, standing in the community and in his profession, all as a result

of Defendant(s)' actions.

321.    The acts of Defendant(s) were intentional and or with conscious disregard for

Patrick's rights, good name, and reputation, and with intent to vex, injure or annoy Patrick

such as to constitute oppression, fraud, malice, wanton and reckless regard for the truth,

thus entitling Patrick to exemplary and punitive damages in an amount appropriate to

punish Defendant(s) and or set an example of Defendant(s) and to deter such conduct in

the future, which amount will be proved at trial.

322.    By reason of the foregoing, Patrick has been damaged in the sum of ten million

($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.


## AS AND FOR A FIFTEENTH CAUSE OF ACTION

**VIOLATION OF THE NEW YORK STATE CONSTITUTION AND LAWS, INCLUDING BUT NOT LIMITED TO NEW YORK CRIMINAL PROCEDURE LAW §180.10, AND THE RULE OF HURRELL-HARRING**

**AGAINST PIERMONT AND BOUTROS**

***FOR DEPRIVATION OF THE RIGHT TO THE***

***AIDE OF COUNSEL AT ARRAIGNMENT***

323.    Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 322

of this Complaint with the same force and effect as if fully set forth herein.

324.    This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1367.

325.    It is a well-settled, basic, fundamental right that criminally accused defendants have a right to the aide of counsel at all critical stages of a criminal proceeding, including at arraignment.

326.    At all times relevant, Patrick was a criminally accused Defendant.

327.    Patrick was arraigned on the criminal charges filed against him.  Said arraignment was in-fact a criticial stage of the proceedings in which his liberty and freedom were at issue.  Bail was set against Patrick's liberty interests and no applications were made on his behalf in any regard or for any purpose.

328.    At no time relevant was any attorney provided for Patrick despite crystal clear mandates to the contrary from the New York State Court of Appeals that all criminally accused Defendants, including, at that time, Patrick, be provided an attorney.  In fact, Rockland County has, upon information and belief, received funds from the State of New York to ensure that counsel is present at all arraignments, including in the PIERMONT municipal court. Such funding has enabled the Rockland County Public Defender's Office to maintain on-call attorneys in the off-hours to appear in municipal courts when arraignments are scheduled. Accordingly, in New York, and particularly in Rockland County, criminally accused Defendants need not specifically request counsel; instead, counsel is to be provided automatically.

329.    Upon inquiry of BOUTROS by Patrick and or his father regarding the right to counsel at arraignment, Patrick was caused to believe that counsel was not necessary and was otherwise swayed not to seek the aide of counsel and was also, otherwise, in essence, denied and or deprived of his right to counsel notwithstanding his clearly established rights

under the United States Constitution, the New York State Constitution, and New York State statute and law.

330.     The Defendant(s)' words, behavior, actions and or omissions are the direct and proximate cause of the deprivation of the right to counsel.

331.     As a result, Patrick was caused to suffer damages as alleged above and herein.

332.     By reason of the foregoing, Patrick has been damaged in the sum of ten million ($10,000,000.00) dollars or more, as well as punitive damages, costs and attorney's fees.

## **PUNITIVE DAMAGES ARE SOUGHT BY THE PLAINTIFF**

333.  Patrick repeats and reiterates the allegations set forth in paragraphs 1 through 332 of this Complaint with the same force and effect as if fully set forth herein.

334.  The acts of the Defendant(s) were willfull, wanton, malicious, and oppressive and were motivated solely by a desire to harm Patrick without regard for his well-being and rights, privileges, and immunities and were based on a lack of concern and ill-will towards Patrick.  Such acts therefore deserve an award of punitive damages.

335.  The conduct of the Defendants was the result of an evil motive and or intent and involves reckless and or callous indifference to the federally protected rights of Patrick.  Defendant's actions shock the conscience and are of such a nature and degree that Defendants should be made an example of so that conduct such as theirs is discourgaed and others who may be prone to such illegal and outrageous conduct will recognize that such behavior is wrong, intolerable, unconstitutional, and contrary to our way of life as free, liberty-celebrating Americans.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Patrick, by and through his attorneys, the undersigned, respectfully requests the following damages and relief:

a. On the First Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

b. On the Second Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

c. On the Third Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

d. On the Fourth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

e. On the Fifth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

f. On the Sixth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

g. On the Seventh Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

h. On the Eighth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

i. On the Ninth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

j. On the Tenth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

k. On the Eleventh Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

l. On the Twelfth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

m. On the Thirteenth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

n.  On the Fourteenth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

o.  On the Fifteenth Cause of Action, the sum of ten million ($10,000,000.00) dollars or more;

p.  Compensatory and punitive damages;

q.  An award of costs and attorneys' fees pursuant to 42 U.S.C. 1988 and as otherwise allowed by law; and

r.  Any and all other and further relief this Court deems just, proper, and appropriate.

Dated: New City, New York
       May 20, 2020                         Respectfully Submitted,


                                            **THE LAW OFFICES OF DAVID FRIED, PC**



                                            _____
                                            BY: DAVID FRIED, ESQ. (DF5879)
                                            *Counsel for the Plaintiff*
                                            254 South Main Street, Suite 310
                                            New City, New York 10956
                                            P: (845) 671-1883
                                            F: (845) 634-2430
                                            E: David@dfjustice.com