UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PATRICK BAKER,

Plaintiff,

-against-

THE VILLAGE OF PIERMONT, POLICE OFFICER PETER BOUTROS, individually and as an Employee of the Village of Piermont, CHIEF MICHAEL O'SHEA, individually and as an Employee of the Village of Piermont, and JOHN DOES NO.s 1-10 (said names being unknown and fictitious),

Defendants.
----------------------------------------------------------X

20 Civ. 1690 (CS)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

PORTALE RANDAZZO LLP
*Attorneys for the Defendants*
245 Main Street, Suite 340
White Plains, New York 10601
(914) 359-2400

By: James A. Randazzo
Drew W. Sumner

**Table of Contents**

**PRELIMINARY STATEMENT** ........ **1**

**STATEMENT OF FACTS** ........ **2**

**ARGUMENT** ........ **4**

I. PLAINTIFF FAILS TO STATE A CLAIM FOR UNLAWFUL SEIZURE, FALSE ARREST OR FALSE IMPRISONMENT ........ 4

II. PLAINTIFF FAILS TO STATE AN UNLAWFUL SEARCH CLAIM BASED UPON EVENTS AT THE SCENE OF THE TRAFFIC STOP ........ 6

III. PLAINTIFF FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION ........ 10

IV. PLAINTIFF'S *MONELL* CLAIM SHOULD BE DISMISSED ........ 10

V. PLAINTIFF FAILS TO STATE A DEPRIVATION OF COUNSEL CLAIM ........ 13

VI. OFFICER BOUTROS ACTED WITHIN THE SCOPE OF HIS EMPLOYMENT AT ALL TIMES RELEVANT TO THE COMPLAINT ........ 14

VII. THE VILLAGE OF PIERMONT IS IMMUNE FROM PUNITIVE DAMAGES UNDER 42 U.S.C. § 1983 ........ 15

**CONCLUSION** ........ **15**

## Table of Authorities

### Cases

*Arizona v. Gant*, 556 U.S. 332, 351 (2009) .......... 8

*Arizona v. Johnson*, 555 U.S. 323, 331 (2009) .......... 7

*Breton v. City of New York*, 404 F. Supp. 3d 799, 816 (S.D.N.Y. 2019) .......... 11

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) .......... 15

*Colorado v. Bertine*, 479 U.S. 367, 372 (1987) .......... 9

*Connick v. Thompson*, 563 U.S. 51, 61 (2011) .......... 11

*Davis v. City of New York*, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002) *aff'd* 75 Fed. App'x 827 (2d Cir. 2003) .......... 12

*Evans v. City of New York*, 308 F. Supp. 2d 316, 329 fn. 8 (S.D.N.Y. 2004) .......... 4

*Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) .......... 10

*Hurrell-Harring v. State of New York*, 15 N.Y.3d 8, 26 (N.Y. 2010) .......... 13, 14

*Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) .......... 6

*Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014) .......... 4

*Merring v. Town of Tuxedo*, 07-cv-10381 (CS) , 2009 U.S. Dist. LEXIS 61444 at *22-26 (S.D.N.Y. March 31, 2009) .......... 7

*New York v. Kohut*, 30 N.Y.2d 183, 187 (N.Y. 1972) .......... 5

*Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) .......... 11

*Pennsylvania v. Mimms*, 434 U.S. 106, 111 fn. 6 (1977) .......... 7

*People v. Edwards*, 163 A.D.3d 712, 714 (2d Dep't 2018) .......... 9

*Plair v. City of New York*, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) .......... 14

*Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) .......... 8

*Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004) .......... 10

*Rowley v. City of New York*, 2005 U.S. Dist. LEXIS 22241, at *37 (S.D.N.Y. Sept. 29, 2005) .. 15

*Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ........................................................ 10

*Sorlucci v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)............................................. 12

*South Dakota v. Opperman*, 428 U.S. 364, 369 (1979) ................................................................. 9

*Tieman v. City of Newburgh*, 13-cv-4178 (KMK), 2015 U.S. Dist. LEXIS 38702, at *36 (S.D.N.Y. March 26, 2015) ........................................................................................... 12

*Tillery v. Lempke*, 10-cv-1298 (GTS), 2011 U.S. Dist. LEXIS 136448, at *20-21 (N.D.N.Y. Nov. 29, 2011)........................................................................................................................ 5

*United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017)........................................................ 9

*United States v. Figueroa*, 425 F. App'x 15, 17 (2d Cir. 2011) ..................................................... 5

*United States v. Lopez*, 547 F.3d 364 369 (2d Cir. 2008)............................................................... 9

*United States v. Lyle*, 919 F.3d 716 (2d Cir. 2019) ........................................................................... 9

*United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994)................................................................ 4

**Statutes**

42 U.S.C. § 1983 1

New York Criminal Procedure Law § 180.10 13, 14

New York Penal Law §265.03(3) 1

New York Penal Law §265.37 1

**PRELIMINARY STATEMENT**

Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 and alleges violations of his constitutional rights and state law stemming from an incident leading to his arrest on March 14, 2019, and subsequent prosecution. *See* Plaintiff's First Amended Complaint annexed to the Declaration of James A. Randazzo as Exhibit "A" (the "FAC") at ¶ 1, 15. Defendant Village of Piermont Police Officer Peter Boutros effected a traffic stop of Plaintiff's car and ultimately arrested and initiated the prosecution of Plaintiff for Criminal Possession of a Weapon in the Second Degree (a felony pursuant to New York Penal Law §265.03(3)), Unlawful Possession of Certain Ammunition Feeding Devices (a misdemeanor pursuant to New York Penal Law §265.37), and a speeding ticket. *See* FAC at ¶¶ 16, 48-52, 85, 90. Plaintiff brings this suit against the Village of Piermont, Officer Boutros, and Piermont Police Chief Michael O'Shea (the "Defendants"). The Defendants now move to dismiss discrete claims from Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Specifically, Defendants now move to dismiss Plaintiff's federal claims for unlawful search and seizure, false imprisonment, malicious prosecution, deprivation of Plaintiff's right to counsel, and *Monell* liability. Defendants also move to dismiss Plaintiff's state law claims against the Defendants for negligent hiring, training, supervision and retention and the deprivation of right to counsel at arraignment.

Plaintiff's claims, as outlined above, must be dismissed because Officer Boutros's arrest and prosecution of Plaintiff were supported by probable cause. Plaintiff's *Monell* claim is unsupported by any factual allegations and must be dismissed as conclusory. As to Plaintiff's state law claim for negligent hiring, training, supervision and retention, it must be dismissed because the Village admits that Officer Boutros acted within the scope of his employment at all times

relevant to the Complaint. Lastly, Plaintiff's claim for punitive damages must be dismissed as against the Village of Piermont because public policy prohibits an award of punitive damages against a municipality.

**STATEMENT OF FACTS**[1]

Plaintiff alleges that on March 19, 2019, Village of Piermont Police Officer Boutros effected a traffic stop of his vehicle. *See* FAC at ¶¶ 15-16. Officer Boutros told Plaintiff that he pulled Plaintiff's car over for speeding because Plaintiff drove 55 miles per hour in a 40 mile per hour zone. *See id.* at ¶ 19. During the traffic stop Officer Boutros directed Plaintiff to open his glove compartment and Plaintiff complied. *See id.* at ¶¶ 22-23. Officer Boutros instructed Plaintiff to exit the vehicle and Plaintiff complied. *See id.* at ¶ 29. Once Plaintiff exited his vehicle, Officer Boutros directed Plaintiff to empty his pockets. *See id*. Plaintiff next informed Officer Boutros that "he was carrying a legally registered and licensed firearm which was secured on his waistband in a holster." *Id.* at ¶ 30. Plaintiff offered to show his pistol permit to Officer Boutros, but Boutros did not allow Plaintiff to present it. *See id.* at ¶ 32.

Officer Boutros next patted Plaintiff down and removed all of Plaintiff's belongings from Plaintiff's pockets. *See id.* at ¶ 33. "Boutros placed all of Patrick's belongings on the trunk of his vehicle, directed [Plaintiff] to stand four (4) feet behind [Plaintiff's] vehicle and to wait while [Boutros] searched the vehicle." *Id.* at ¶ 35. Boutros' search did not reveal any contraband. Boutros eventually arrested Plaintiff and told Plaintiff he was under arrest for possession of a loaded weapon. *See id.* at ¶¶ 44-45.

---

[1] For the purposes of this motion the Defendants statement of facts draws on Plaintiff's Amended Complaint and accepts his well-pleaded factual allegations as true.

Boutros secured Plaintiff in handcuffs and sat him in the rear of Boutros' police vehicle. *See id.* at ¶ 44. Boutros then searched Plaintiff's vehicle a second time while Plaintiff sat in handcuffs in the rear of Boutros' vehicle. *See id.* at ¶ 48. Boutros did not discover any contraband during this search. *See id.* at ¶ 49. Boutros finished the search, advised Plaintiff of his *Miranda* rights, and the two waited at the scene for a tow truck to arrive to tow Plaintiff's vehicle from Route 9W. *See id.* at ¶¶ 15, 49, 51.

Boutros filed felony and misdemeanor complaints against Plaintiff for criminal possession of a weapon in the second degree, unlawful possession of an ammunition feeding device, and issued a speeding ticket to Plaintiff. *See id.* at ¶ 90.

Plaintiff was arraigned and bail set at $5,000. *See id.* at ¶ 91. Plaintiff's father posted bail shortly after the arraignment and after Plaintiff spent a total of approximately ten hours in police custody. *See id.* at ¶ 91.

Approximately one week after Plaintiff's arraignment the Rockland County District Attorney's office reduced the felony charge pursuant to Penal Law § 265.03(3) to misdemeanor Criminal Possession of a Weapon in the Fourth Degree pursuant to Penal Law § 265.01(1). *See id.* at ¶ 97. The Court ultimately adjourned the charges against Plaintiff in contemplation of dismissal on September 14, 2019. *See id.* at ¶ 101.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM FOR UNLAWFUL SEIZURE, FALSE ARREST OR FALSE IMPRISONMENT

Plaintiff asserts that Officer Boutros violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments, and under state law, to be free from unlawful seizure, false arrest and false imprisonment. Defendants seek to dismiss Plaintiff's claims of unlawful seizure, and the claim based upon the alleged unlawful searches of Plaintiff's person and vehicle at the scene of the traffic stop. Though pled across three distinct causes of action, Plaintiff's underlying seizure claim is subject to Fourth Amendment analysis and must be dismissed because probable existed to arrest Plaintiff for speeding and possession of a loaded firearm. "To the extent that [a] plaintiff also asserts a false imprisonment claim, that claim is no different from his false arrest claim." *Evans v. City of New York*, 308 F. Supp. 2d 316, 329 fn. 8 (S.D.N.Y. 2004).

Plaintiff alleges that Officer Boutros explained to Plaintiff that the traffic stop occurred because Plaintiff operated his vehicle in excess of the speed limit. *See id.* at ¶ 19. Plaintiff does not dispute Boutros' allegation, and does not contend that he lawfully operated his vehicle at or below the posted speed limit. Officer Boutros's observation of Plaintiff speeding provided probable cause to effect a traffic stop. Not only did Boutros' observation justify a vehicle stop, but it gave Boutros probable cause to arrest Plaintiff. "When an officer observes a traffic offense – however minor – he has probable cause to stop the driver of the vehicle and effect a subsequent arrest for that offense." *Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014) *quoting United States v. Scopo,* 19 F.3d 777, 782 (2d Cir. 1994). "It is well settled in this Circuit that an observed traffic violation is "a specific and articulable fact" sufficient to justify the search and seizure of a vehicle

under the Fourth Amendment, and that speeding constitutes a traffic violation under New York law." *United States v. Figueroa*, 425 F. App'x 15, 17 (2d Cir. 2011) (internal citations omitted).

As mentioned above, probable cause existed to arrest Plaintiff for speeding and also for possession of a loaded weapon. Probable cause related to Plaintiff's alleged criminal possession of a weapon was not vitiated by Plaintiff explaining that he held a valid license. "Certain exemptions, including the ability to obtain licenses to legally possess certain firearms, exist in New York. However, those statutory exemptions do not appear in the body of the statutes that criminalize such conduct, *i.e.*, Penal Law §§ 265.01-265.05. Instead, those exemptions appear in a separate statute § 265.02. It is well settled that where, as in the case before this Court, an exception to a criminal statute is not contained in the statute that criminalizes the conduct in question but rather in a separate statute, the prosecution is not required to charge in an indictment (and thereafter prove at trial) that the defendant's conduct did not fit within the statutory exemption; instead a defendant claiming such a statutory exemption must assert such exemption either as a "general issue or by affirmative defense." *Tillery v. Lempke*, 10-cv-1298 (GTS), 2011 U.S. Dist. LEXIS 136448, at *20-21 (N.D.N.Y. Nov. 29, 2011) *citing New York v. Kohut*, 30 N.Y.2d 183, 187 (N.Y. 1972).

Moreover, probable cause did not vitiate because Officer Boutros could not reasonably be expected to verify the authenticity of Plaintiff's pistol permit prior to Plaintiff's arrest and initiation of prosecution in the early morning hours.

Thus, Plaintiff's arrest was supported by probable cause and bars his federal unlawful seizure, false imprisonment and false arrest claims (the Second, Fourth and Fifth Causes of Action). "[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and […] it is not relevant whether probable cause existed with respect to each individual

charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not the validity of each charge." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

## II. PLAINTIFF FAILS TO STATE AN UNLAWFUL SEARCH CLAIM BASED UPON EVENTS AT THE SCENE OF THE TRAFFIC STOP

Plaintiff's Second Cause of Action asserts a claim of unlawful search, based in part upon Officer Boutros's actions at the scene of the traffic stop, specifically, the search of Plaintiff's person and vehicle. Plaintiff's unlawful search claim, to the extent that it is based on Boutros's actions at the scene of the traffic stop, must be dismissed because the searches were, in fact, lawful.

Plaintiff identifies several discrete incidents and claims that they form the basis for his unlawful search claim: (1) Plaintiff asserts that Officer Boutros directed him to open the glove compartment. *See* FAC at ¶¶ 22-23. (2) Boutros directed Plaintiff to exit the car and empty his pockets. *See id.* at ¶ 29. (3) Plaintiff alleges that Officer Boutros patted him down and removed all the belongings from Plaintiff's clothes' pockets. *See id.* at ¶ 33. (4) Boutros searched Plaintiff's vehicle while Plaintiff stood, not in handcuffs, approximately four feet behind the vehicle. *See id.* at ¶¶ 34, 36. (5) Boutros searched Plaintiff's vehicle a second time, while Plaintiff sat handcuffed in the rear of Boutros's police vehicle. *See id.* at ¶ 48.

Defendants assert that Boutros was legally justified to take each particular action that Plaintiff complains about related to searches while at the scene of the traffic stop. As to the first claim, the glove compartment claim, Plaintiff complied with a request to open the glove compartment during the traffic stop. Plaintiff does not allege that he exercised his right to refuse to open the glove compartment. Nor does Plaintiff allege that Officer Boutros actually searched the glove compartment. Rather, Plaintiff asserts that Officer Boutros, from outside the vehicle,

directed Plaintiff to open the glove box and Plaintiff complied. There is no allegation that Boutros entered the vehicle, or physically searched the glove box at that time. This simply is not a search, and in any event, Plaintiff complied with a request from Boutros. The glove box claim does not state an unlawful search claim pursuant to the Fourth Amendment.

The second "claim" Plaintiff asserts relates to Officer Boutros's direction to Plaintiff to exit the vehicle and empty his pockets. Taking each in turn, Officer Boutros's order to exit the vehicle during the traffic stop was lawful. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 fn. 6 (1977) ("We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.").

Once Plaintiff exited the vehicle pursuant to Boutros's lawful order, Plaintiff alleges that he told Officer Boutros that he was carrying a firearm in a holster on his waistband. *See* FAC at ¶ 30. Plaintiff does not allege that he emptied his pockets, or that Officer Boutros searched him, prior to Plaintiff's voluntary representation that he was carrying a firearm on his person. Once Plaintiff told Officer Boutros that he possessed a firearm on his person, Officer Boutros had reasonable suspicion to pat Plaintiff down in the interest of officer safety. "[A] driver, once outside the stopped vehicle, may be patted down for weapons if the officer reasonably concludes that the driver 'might be armed and presently dangerous.'" *Arizona v. Johnson*, 555 U.S. 323, 331 (2009).

Plaintiff alleges that Boutros "brought Patrick to the back of his vehicle, patted him down, [and] removed all of his belongings from inside his pockets…" *See* FAC at ¶ 33. Boutros removed Plaintiff's gun from his holster. *See id.* at ¶ 32. This limited protective search was lawful in order to protect officer safety. *See Merring v. Town of Tuxedo*, 07-cv-10381 (CS) , 2009 U.S. Dist. LEXIS 61444 at *22-26 (S.D.N.Y. March 31, 2009) ("Accordingly, I hold that on the basis of

Plaintiff's volunteering that he was carrying a handgun, regardless of the validity of his license under New York law, it was reasonable for Sergeant Welsh to conduct a limited protective search of Plaintiff's person in order to secure his safety before any further investigation.").

After Officer Boutros secured Plaintiff's firearm, he lawfully conducted a search of the interior of the passenger compartment incident to Plaintiff's arrest and in furtherance of officer safety. Plaintiff admitted that while Boutros searched the vehicle, he stood approximately four feet from the rear of the vehicle and was not in handcuffs. *See* FAC at ¶¶ 31-32. "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe that the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009).

Here, Plaintiff was within reaching distance of the passenger compartment at the time of the search, and, it was also reasonable to believe that Plaintiff may also have other firearms or ammunition in his possession, or in the vehicle, which would constitute additional evidence of Plaintiff's criminal possession of a weapon. Of course, Officer Boutros established probable cause to search the interior of the car, and also to arrest Plaintiff for criminal possession of a weapon in violation of Penal Law § 265.03(3), once he recovered Plaintiff's concealed firearm. Officer Boutros was entitled to search the vehicle incident to arrest, and to ensure officers' safety at the scene by securing all weapons and ammunition. A search incident to arrest need not be performed after an arrest, but may be performed any time after developing probable cause to arrest. *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980).

Plaintiff also challenges the validity of Boutros's second search of the vehicle, while Plaintiff sat handcuffed in the rear of Boutros's police vehicle. This search was an inventory search, conducted because Officer Boutros called a tow truck to impound Plaintiff's vehicle under

the community caretaking function. Officer Boutros's decision to tow and impound Plaintiff's vehicle was reasonable under the circumstances because leaving it parked alongside Route 9W would pose a threat to public safety. *See Vasquez v. Yadali*, 16-CV-895 (NSR), 2020 U.S. Dist. LEXIS 38820 at *21 (S.D.N.Y. March 5, 2020). "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1979). Once P.O. Boutros decided to lawfully impound the vehicle, he was authorized to conduct an inventory search. *See United States v. Lyle*, 919 F.3d 716 (2d Cir. 2019); *see also United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017).

"It is well recognized in Supreme Court precedent that, when law enforcement officials take a vehicle into custody, they may search the vehicle and make an inventory of its contents without need for a search warrant and without regard to whether there is probable cause to suspect that the vehicle contains contraband or evidence of criminal conduct." *United States v. Lopez,* 547 F.3d 364, 369 (2d Cir. 2008). "Inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and the guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). When vehicles are lawfully impounded police are permitted to conduct an inventory search of the vehicle. *See People v. Edwards*, 163 A.D.3d 712, 714 (2d Dep't 2018).

For these reasons, Plaintiff's Fourth Amendment claims premised on the alleged unlawful searches of his person and property conducted by Boutros at the scene of the traffic stop fail to state a claim upon which relief may be granted and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR MALICIOUS PROSECUTION

Plaintiff attempts to plead a federal malicious prosecution claim against Officer Boutros.[2] However, Plaintiff accepted an adjournment in contemplation of dismissal, and that bars Plaintiff's malicious prosecution claim because he cannot demonstrate that the prosecution terminated in his favor. "[I]t is well settled in this Circuit that acceptance of an ACD does not constitute a favorable termination in the malicious prosecution context and thus that acceptance of an ACD precludes a plaintiff's malicious prosecution claim…" *Corso v. Calle-Palomeque*, 17-cv-6096 (NRB), 2020 U.S. Dist. LEXIS 91882, at *18-19 (S.D.N.Y. May 26, 2020); *see also Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) ("An adjournment in contemplation of dismissal is not considered to be a favorable termination for malicious prosecution claims."); *Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004).

Plaintiff admits that he accepted an adjournment in contemplation of dismissal. *See* FAC at ¶ 101. Thus, Plaintiff's malicious prosecution claim fails.

Additionally, Plaintiff's malicious prosecution claim must be dismissed in its entirety because, as set forth above, Plaintiff's arrest and prosecution was supported by probable cause based upon Officer Boutros's observations, and Plaintiff's admissions, that Plaintiff unlawfully carried a loaded weapon. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

## IV. PLAINTIFF'S *MONELL* CLAIM SHOULD BE DISMISSED

[2] Plaintiff does not plead any state law malicious prosecution claim, but to the extent such a claim may be read into the Amended Complaint it too fails for the same reason that Plaintiff's federal malicious prosecution claim fails.

Plaintiff's *Monell* claim is premised on threadbare recitals that the Village of Piermont's policies, procedures or practices required Officer Boutros to take certain actions in violation of Plaintiff's rights. However, Plaintiff's Amended Complaint fails to identify any official policies formally adopted by the Village, any action by policy-makers that could give rise to *Monell* liability, or a failure to provide adequate training or supervision.[3]

Threadbare recitals and conclusory statements simply do not suffice to state a claim. "Put another way, mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Tieman v. City of Newburgh*, 13-cv-4178 (KMK), 2015 U.S. Dist. LEXIS 38702, at *38 (S.D.N.Y. March 26, 2015)

To bring a *Monell* claim against the Village, Plaintiff must "show that the challenged acts were performed pursuant to a municipal policy or custom…" *See Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). "To identify a policy or custom, the plaintiff must demonstrate that the municipality, through its deliberate conduct, was the moving force behind the injuries alleged." *Breton v. City of New York*, 404 F. Supp. 3d 799, 816 (S.D.N.Y. 2019) (internal citations omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

To satisfy the policy or custom requirement a Plaintiff must allege:

> "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in

---

[3] Plaintiff asserts a state law claim for negligent supervision, but Plaintiff's Tenth Cause of Action that sets forth his *Monell* claim makes no mention of a failure to supervise, or failure to train, theory of *Monell* liability.

> question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."

*Tieman, supra*. at *36 (S.D.N.Y. March 26, 2015). Plaintiff fails to plead any facts that establish a *Monell* claim under the first, second or fourth categories. There are no factual allegations of any formal policies officially endorsed by Piermont that resulted in violation of Plaintiff's rights. There are no factual allegations concerning any acts by Piermont's policymakers related to the alleged violation of Plaintiff's rights. There are no factual allegations concerning any deficiencies in Piermont's supervision or training of its police officers. Thus, Plaintiff's theory of *Monell* liability must fall under the third prong – "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware…" *Id.*

However, Plaintiff fails to plead any facts that establish that the alleged violations were not isolated incidents of unconstitutional conduct. *Monell* liability does not attach to Piermont "simply for the isolated unconstitutional acts of its employees." *Sorlucci v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). Plaintiff's allegations related to the March 14, 2019, incident alone are insufficient to plausibly support an inference that there existed a widespread practice so settled and permanent as to constitute a municipal custom. *Davis v. City of New York*, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002) *aff'd* 75 Fed. App'x 827 (2d Cir. 2003).

The lack of factual allegations to support Plaintiff's claims concerning the practices and customs of the Piermont police department requires dismissal of Plaintiff's *Monell* claim in its entirety.

## V. PLAINTIFF FAILS TO STATE A DEPRIVATION OF COUNSEL CLAIM

Plaintiff brings a deprivation of his right to counsel claim pursuant to the Sixth Amendment against Officer Boutros, and a claim for deprivation of his right to counsel under the New York State Constitution against Officer Boutros and the Village of Piermont. Plaintiff alleges that Officer Boutros informed him, and Plaintiff's father, that "counsel was not necessary" at arraignment and that Officer Boutros's representation caused Plaintiff to believe that counsel was not necessary and that Plaintiff was "swayed not to seek the aide of counsel" at his arraignment. *See* FAC at ¶ 214.

The New York Court of Appeals has held that an indigent pre-trial detainee may advance a claim for the failure to assign counsel during arraignment against the State of New York. *See Hurrell-Harring v. State of New York*, 15 N.Y.3d 8 (N.Y. 2010). *Hurrell-Harring* does not stand for the notion that a Plaintiff may sue a municipality or police officer for the Court's failure to assign counsel to Plaintiff at the arraignment. New York Criminal Procedure Law § 180.10 sets forth the court proceedings upon a felony complaint, arraignment, the criminal defendant's rights, the court's instructions and bail matters. Pursuant to § 180.10(3):

> "The defendant has a right to the aid of counsel at the arraignment and at every subsequent stage of the action, and, if he appears upon such arraignment without counsel, has the following rights: (a) to an adjournment for the purpose of obtaining counsel; and (b) to communicate, free of charge, by letter of by telephone provide by the law enforcement facility where the defendant is held to a phone number located in the United States or Puerto Rico, for the purpose of obtaining counsel and informing a relative or friend that he or she has been charged with an offense; and (c) to have counsel assigned by the court in any case where is financially unable to obtain same."

New York CPL § 180.10. § 180.10(4) further requires that "The Court must inform the defendant of all rights specified in subdivisions two and three. The court must accord the defendant

opportunity to exercise such rights and must itself take such affirmative action as is necessary to effectuate them." As such, New York's criminal procedure law imposes an obligation on the Court to inform the defendant of his right to counsel, accord the defendant an opportunity to exercise such rights, and to take affirmative steps necessary to effectuate the defendant's right to counsel.

Officer Boutros's actions were certainly not the proximate cause of the violation of Plaintiff's rights as he did nothing to prevent the Court from performing its required function pursuant to CPL § 180.10. Plaintiff alleges that Boutros made representations about the alleged lack of necessity of counsel at arraignment, but Boutros did not violate Plaintiff's right to counsel because Plaintiff's right to counsel did not attach until the arraignment itself. Once Plaintiff presented for arraignment it became the Court's function under CPL § 180.10 to guarantee his rights were adequately protected, thus insulating Boutros from personal liability under § 1983.

Plaintiff asserts that the Village of Piermont is liable for the state law deprivation of his right to counsel. However, Plaintiff fails to plead any acts by Village officials other than Boutros that could give rise to liability against Piermont. Further, as demonstrated by *Hurrell-Harring*, the proper party against whom such a claim may be brought is the State of New York, not the municipality.

## VI. OFFICER BOUTROS ACTED WITHIN THE SCOPE OF HIS EMPLOYMENT AT ALL TIMES RELEVANT TO THE COMPLAINT

Piermont concedes that Officer Boutros acted within the scope of his employment at all times relevant to the Amended Complaint. Plaintiff's Twelfth Cause of Action under New York state law for negligent hiring, supervision, training and retention must be dismissed because Officer Boutros was acting within the scope of his employment. *See Plair v. City of New York*, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011); *see also Rowley v. City of New York*, 2005 U.S. Dist. LEXIS

22241, at *37 (S.D.N.Y. Sept. 29, 2005) ("[W]here a defendant employer admits its employees were acting within the scope of their employment, an employer may not be held liable for negligent hiring, training, and retention as a matter of law.").

**VII. THE VILLAGE OF PIERMONT IS IMMUNE FROM PUNITIVE DAMAGES UNDER 42 U.S.C. § 1983**

Plaintiff's claim for punitive damages against the Village of Piermont must be dismissed because "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

**CONCLUSION**

Based on the foregoing, the Defendants request that the Court grant their motion to dismiss the specified claims from Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and for such other relief the Court may deem necessary.

Dated: June 5, 2020
White Plains, New York

PORTALE RANDAZZO LLP

__/s/ James A. Randazzo______________

James A. Randazzo
Drew W. Sumner
*Attorneys for the Defendants*
245 Main Street, Suite 340
White Plains, New York 10601
(914) 359-2400

To: Counsel of record via ECF.